Virginia HALE, Appellant (Plaintiff Below),

v.

MOSSBERG/HUBBARD, Appellee (Defendant Below).

No. 2–581A160.

Court of Appeals of Indiana, Second District.

Dec. 28, 1981.

Edgar A. Grimm, Grimm & Grimm, Auburn, for appellant.

Leonard E. Eilbacher, Hunt, Suedhoff, Borror, Eilbacher & Lee, Fort Wayne, for appellee.

## MEMORANDUM DECISION

SHIELDS, Judge.

Appellant Virginia Hale appeals the decision of the Industrial Board (Board) which found her permanently partially impaired and required her employer, Mossberg/Hubbard (Mossberg) to pay her for 15% permanent partial impairment.

Hale raises five issues on appeal:

1.  The Board erred in finding Hale is not permanently totally disabled;
2.  The Board erred in finding Hale suffered a 7% prior impairment;
3.  The Board erred in failing to make a specific finding concerning the termination of Hale's temporary total disability;
4.  The Board erred in failing to find Hale was denied available light work at Mossberg because of a union contract with Mossberg;  and
5.  The Board erred in failing to find Mossberg acted in bad faith in handling Hale's claim.

We affirm.

The evidence most favorable to the decision of the Board is that on December 13, 1977 Hale suffered a back injury when she was shoveling a substance called "oil dry" while in the performance of her janitorial duties.  As a result of this injury, Hale eventually underwent a spinal fusion.  She was released by her doctor to return to light work on August 15, 1978 but was told by Mossberg that light work was not available because of a union contract which required work be rotated among all employees.  Hale attempted to find employment elsewhere, but was unable to do so.  On January 12, 1979 Hale's physician stated her injuries had reached a permanent, quiescent state.  Mossberg had paid Hale temporary total disability payments for the 56 weeks between the date of her injury and January 12, 1979.  The first payment was for the agreed-upon amount of $100.27 but thereafter Mossberg reduced its weekly payments to $85.24.

The Board found Hale suffered 22% permanent partial impairment but was 7% impaired prior to her accident and therefore awarded her 15% permanent partial impairment.

## I

Hale contends the Board's finding she was not permanently disabled is erroneous.

The Board made the following findings:

"2. Plaintiff, while shoveling oil-dry for Defendant, on December 13, 1977, suffered an acute, severe low back pain which was immediately reported to her foreman. This incident was treated as any industrial accident by the Defendant, and medical treatment was authorized, temporary total disability compensation was paid in part, as above stipulated and certain medical expenses were paid.

"3. A dispute between the parties arose when following release on August 15, 1978, by Dr. Mackel and termination of temporary total disability payments on January 12, 1979 by Defendant, Plaintiff sought to return to work for the Defendant and was told that 'no work that does not require heavy lifting and repeated bending' was available.

"4. The defendant continued payment of temporary total disability, as above stipulated, until Defendant received a written report from Dr. Mackel dated January 12, 1979, wherein he expressed the opinion that Plaintiff's condition was permanent and quiescent and that she suffered a 10% permanent partial impairment of the body as a whole.

\*　　\*　　\*　　\*　　\*　　\*

"7. The medical evidence in form of the Depositions of Dr. Mackel and Dr. Cattell clearly disposes of part of the issues:

(A) Plaintiff's condition was determined permanent and quiescent as of January 12, 1979.

(B) Plaintiff suffered a pre-existing condition of spondylolisthesis, which contributes 7% of the body as a whole, [sic] which Plaintiff suffers.

(C) However, the doctors differ and their evidence is that Plaintiff suffers either 10% or 25% permanent partial impairment of the body as a whole following treatment for the accident.

"8. The Single Hearing Judge finds from all the evidence, Plaintiff suffers a total permanent partial impairment of 22% of the body as a whole, apportioned 7% as pre-existing and 15% as a result of the industrial accident suffered December 13, 1977, and that the injury was permanent and quiescent as of January 12, 1979.

"9. The Defendant does not owe for additional temporary total disability or medical expenses after January 12, 1979, but is liable for 15% permanent partial impairment from December 13, 1977, with credit, as stipulated.

"10. The Plaintiff does not suffer permanent total disability solely because the Defendant does not have employment available to fit her present limitations. The reason for the unavailability is not relevant. Further, it is unlikely that a union negotiated contract would deliberately deprive union members of their rights under Workmen's compensation. If, however, such were to be clearly alleged, the Industrial Board would respectfully decline to assume any jurisdiction and defer that issue to the jurisdiction of the Employment Security Division of Indiana.

"11. There is insufficient evidence of permanent total disability. The Plaintiff suffers only a maximum of 22% impairment of body functions, of which 15% is attributed to the accident while employed by Defendant. The spinal fusion is an accepted medical treatment for the condition suffered and limits employment, but does not totally prevent similar factory work, where such is available, generally to 25-year old females."

In reviewing the decision of an administrative board, we do not weigh evidence or judge the credibility of witnesses. If the evidence is in conflict, we must affirm because we consider only the evidence most favorable to the Board's decision. We may reverse only if, based on the evidence in the record, reasonable men would be bound to reach a decision opposite to that made by the Board. *Coachmen Industries, Inc. v. Yoder,* (1981) Ind.App., 422 N.E.2d 384; *Lona v. Sosa,* (1981) Ind.App., 420 N.E.2d 890.

In essence Hale concludes that because she was paid temporary total disability benefits from the date of her accident to January 12, 1979 and because her condition in no way changed on and subsequent to January 13, 1979 due to the "inhibiting influences of her physical impairment of body function, her tenth grade education, her lack of work experience in any capacity other than as a laborer, her lack of specialized training and her lack of experience which would qualify her for other than laborer employment . . ." (Appellant's brief at 37), the finding of a lack of permanent total disability is erroneous.

Hale would rely only on that evidence that she perceives as evidence of her total permanent disability. She couples evidence of her permanent partial impairment with evidence of her training and expertise, her age, work history, work experience, education, and her inability to obtain employment to argue she is totally permanently disabled. Hale did testify she had sought employment, that when she filled out any written applications she indicated she had had a spinal fusion, and that she failed to receive any offers of employment. However, she did not state, nor is there any evidence to support the conclusion, that the spinal fusion was considered so disabling that she could not obtain any reasonable employment.

■ Also, Hale overlooks the evidence of Drs. Mackel and Cattell, the only medical experts who testified. Although these two experts disagreed as to the precise degree of impairment suffered by Hale, neither testified she was totally disabled or that her impairment would preclude her from ever being capable of reasonable employment. In fact, her treating physician had released her on August 15, 1978 to return to work that did not require "heavy lifting or repeated bending." Hale's own testimony was she felt there were still certain jobs in her former department which she was capable of performing. The evidence supports the Board's finding that Hale was not totally prevented from doing "similar factory work, where such is available, generally to 25-year old females."

■ Hale also misconceives the law on total permanent disability in this state.

"Covarubias' primary argument is that he is permanently totally disabled because he is unable to return to work *of the same kind and character* as that he was doing at the time of his injury. This argument overlooks the distinction between *temporary* total disability and *permanent* total disability.

. . . .

"[O]nce the injury has stabilized to a permanent and quiescent state, *temporary* disability ceases, and the extent of *permanent* injury resulting in a degree of impairment *or* total disability is determined . . . . '[T]he fact that the employee is unable, on account of his injury, to resume work of the same character as the work in . which he was engaged at the time he received the injury, is not such a fact as would of itself defeat a finding that total disability had ended and that permanent partial impairment had ensued.' "

*Covarubias v. Decatur Casting, Div. of Hamilton Allied Corp.,* (1976) 171 Ind.App. 533, 536–37, 358 N.E.2d 174, 176, quoting from *Allen v. United Telephone Co.,* (1976) 168 Ind.App. 696, 345 N.E.2d 261, 265, quoting from *Roush v. W. R. Duncan & Son,* (1932) 96 Ind.App. 122, 183 N.E. 410.

Permanent total disability has been defined thusly:

"A total disability to be permanent must be one which so destroys or shatters a workman's wage earning capacities as to leave him unable to resume reasonable types of employment for the remainder of his life. Since this form of disability is treated in the same section with other harms comprising threats to the wage-earning power such as impairments and lost uses, total permanent disability must be taken to require a greater incapacity than that produced by any other of the scheduled harms."

*White v. Woolery Stone Co., Inc.,* (1979) Ind.App., 396 N.E.2d 137, 139. *See also,*

*Perez v. U. S. Steel Corp.,* (1980) Ind., 428 N.E.2d 212. The burden is on the claimant to produce evidence to show he is unable to carry on reasonable types of employment. *Perez.*

Hale has failed to carry this burden, therefore the Board's decision was proper.

## II

Hale argues the Board erred in finding she suffered a 7% pre-existing impairment and deducting this from her total impairment of 22%. We find the Board acted properly in taking into account Hale's prior impairment in making its award.

I.C. 22–3–3–12 (Burns Code Ed.) provides:

"[I]f the permanent injury for which compensation is claimed, results only in the aggravation or increase of a previously sustained permanent injury or physical condition, regardless of the source or cause of such previously sustained injury or physical condition, the board shall determine the extent of the previously sustained permanent injury or physical condition, as well as the extent of the aggravation or increase resulting from the subsequent permanent injury, and shall award compensation only for that part of such injury, or physical condition resulting from the subsequent permanent injury."

*Goodman v. Olin Matheison Chemical Corp.,* (1977) Ind.App., 367 N.E.2d 1140, held this provision applies in cases in which the claimant has a pre-existing impairment but not when claimant suffers from a prior nonimpairing disease or defect which merely contributes to the end result.

In this case, the Board found Hale had a 7% pre-existing impairment, not merely a pre-existing contributing condition. The Board's finding is supported by evidence on the record. Hale testified she had back trouble prior to the subject accident although she contended her prior trouble was work related. Both medical experts testified Hale suffered an impairment prior to the accident in December 1977. Further, Dr. Cattell testified the condition (spondylo-listhesis) causing the pre-existing impairment would have had to be congenital unless Hale had previously suffered a severe back injury which she denied. The Board obviously accepted the opinion of the medical experts and consequently was required to offset her pre-existing impairment from her present impairment.

## III

Hale argues the Board erred in failing to make a specific finding as to when her temporary total disability ended. We disagree. The Board did specifically find Hale's condition was permanent and quiescent as of January 12, 1979 and Mossberg did not owe for "additional temporary total disability or medical expenses after January 12, 1979." Read together, these two findings constitute a specific determination by the Board that Hale's period of temporary total disability ceased as of January 12, 1979.

## IV

Hale argues she was unlawfully discharged from her employment when Mossberg refused to give her suitable light work when she was released to work by her doctor. Whether or not there is any merit to Hale's charges, the Industrial Board is not the forum in which to argue them. The Workmen's Compensation statute does not require an employer to provide suitable work for an injured employee. Therefore, even if Hale's charge that she was denied work by Mossberg because of a union contract is correct, such a contract would not deny Hale any of her rights under Workmen's Compensation. If Hale was unlawfully discharged, her remedy lies elsewhere. The Board acted properly in refusing to act upon this allegation.

## V

Hale argues the Board erred in failing to make a specific finding as to whether Mossberg acted in bad faith in handling Hale's claim. We find Hale has waived any error on appeal by failing to comply with

Indiana Rules of Appellate Procedure, Rule 8.3(A)(7). Aside from frequent repetitions of the allegation Mossberg was guilty of bad faith and lack of diligence in dealing with Hale's claim because it did not pay her the full amount listed in the Form 12 Agreement, Hale makes no argument at all concerning this issue. Hale cites no cases or other authority concerning the effect of an employer's bad faith, nor does she refer us to any facts which would indicate Mossberg's underpayment was due to bad faith.

Affirmed.

BUCHANAN, C. J., and SULLIVAN, J., concur.