**ROCKWELL INTERNATIONAL,**
**Appellant (Defendant Below),**

v.

**James H. BYRD, Appellee**
**(Plaintiff Below).**

**No. 93A02–8601–EX34.**

Court of Appeals of Indiana,
Fourth District.

Oct. 27, 1986.

Wesley G. Kipp, LaPorte, for appellant.

David L. Hollenbeck, Randall J. Zromkoski, Blachly Tabor Bozik & Hartman, Valparaiso, for appellee.

MILLER, Judge.

Rockwell International, employer, appeals a decision by the Industrial Board of Indiana finding James H. Byrd, employee, suffered an accidental slip and fall injury arising out of and in the course of his employment, sustaining a back injury which permanently and totally disabled him.

Rockwell challenges the Industrial Board's findings that Byrd suffered a work-related injury; that Byrd had no pre-existing back impairment; and, that Byrd is permanently and totally disabled. Rockwell also claims it is entitled to credit for payments of $43,013.14 made to Byrd, before he filed for work-related personal injury disability, by Metropolitan Insurance Company under a non-work related sickness and accident insurance policy.

We affirm.

### FACTS

On June 3, 1977, Betty Rae Byrd, James H. Byrd's wife, completed and submitted a United Auto Workers Claim Form and signed her husband's name, requesting sickness and accident benefits because Byrd had injured his back and leg while jacking up the family car to change tires on May 31, 1977. Byrd testified he was unaware of his wife's execution of the claim form and upon learning of it, he became upset with her. Byrd claims he did not physically take part in either jacking up or changing the tires of the family automobile but rather supervised his son, Wayne Byrd. Byrd did receive and accept total sickness and accident benefits for a non-work related accident of $43,013.14; $33,406.07 in cash and $9,607.07 in medical benefits.

On April 28, 1977 Byrd filed a Form 9 application with the Industrial Board of Indiana, alleging personal injury arising out of and in the course of his employment with Rockwell International. Byrd claimed that on May 26, 1977 he injured his back at work when he slipped and fell while lifting a 50 pound metal helmet from a skid to a table. Raymond Nowak, a co-worker, noticed Byrd was not working to full capacity and questioned Byrd, who responded he had fallen and was experiencing pain. Byrd left work before the end of his shift and went home.

Byrd was initially hospitalized at Starke Memorial Hospital on May 31, 1977. After his release, Byrd sought initial medical care from Dr. Ernest Seller who performed a laminectomy and spinal fusion on August 18, 1977.

After two years of treatment, Byrd had experienced no relief as a result of the surgery. On August 28, 1979, Byrd saw a second physician, Dr. Marvin Gold, an orthopedic surgeon, who examined Byrd and found a 20% permanent partial impairment of the body as a whole as a result of the injuries sustained in the May 26, 1977 industrial accident. Byrd continued treatment with Dr. Gold in 1980 and 1981. Dr. Gold performed a decompressive laminectomy in April 1981. Despite this surgery and other treatment, Dr. Gold believed there had been no appreciable change in Byrd's condition during the period of treatment; Byrd was incapable of engaging in any reasonable employment; and his condition was permanently disabling.

In addition to receiving care from his own two physicians, Byrd was examined by two physicians selected by Rockwell. On October 11, 1979, Dr. Leo Roth examined Byrd and noted he was in pain, walking guardedly, his lumbar spine motion was restricted, and straight leg raising signs were strongly positive bilaterally. Dr. Roth concluded Byrd sustained a 30% permanent partial impairment of the body as a whole as a result of the May 26, 1977 industrial accident. On June 16, 1982 Dr. William A. Starke examined Byrd. Byrd complained of left leg numbness, tingling in his toes, and constant low back pain. Dr. Starke found Byrd had no lumbar flexion, and was tender over the entire lumbar area and left sciatic notch. Dr. Starke

concluded Byrd was experiencing a 50% permanent partial impairment of the body as a whole. Dr. Starke was unable to attribute the impairment to the May 26, 1977 industrial accident and opined Byrd's back impairment could have been preexisting and may have remained totally non-symptomatic until triggered by the trauma of slipping and falling.

In addition, Byrd was evaluated by Dr. David S. Frank, a psychologist who specializes in disability determinations. Dr. Frank found Byrd had an IQ of 80, which places him in the lowest 10–15% of the general population, and Byrd's academic achievement ranged from a high in reading at 5th grade level to a low in math at 3rd grade level. Dr. Frank concluded Byrd was totally and permanently disabled pursuant to the Indiana Workers Compensation Act, and Byrd was not a candidate for vocational rehabilitation.

Since May 1977, Byrd continues to experience pain in his back and legs, with spasms and numbness, for which he takes Tylenol # 3 with codeine. Due to pain in his legs, Byrd sleeps only an average of 2 to 3 hours per night. Byrd also exhibits a propensity to fall and inability to sit for extended periods of time, and must occasionally lie flat to relieve his back pain.

Byrd filed his claim under the Indiana Worker's Compensation Act on April 28, 1979. On June 19, 1981, Hearing Judge John A. Rader, entered an order that Byrd suffered accidental injury arising out of and in the course of his employment with Rockwell when he slipped and fell when lifting a metal helmet on May 26, 1977. Judge Rader heard the medical testimony on February 26, 1985 and issued the following findings of fact and conclusions of law on April 18, 1985:

### "FINDINGS OF FACT AND CONCLUSIONS OF LAW

Said Hearing Judge, having heard all the evidence in said cause, the stipulation of the parties, and having reviewed the entire file and being duly advised in the premises therein, now adopts the stipulation as the Board's findings.

1. It is further found that the plaintiff has suffered a permanent partial impairment causally connected to the accidental injury of 50% of the body as a whole.

2. It is further found that plaintiff's prior employment consisted of semi-skilled to unskilled labor.

3. It is further found that the plaintiff's I.Q. is approximately 80, putting him in the bottom ten to fifteen percent of the population.

4. It is further found that plaintiff's basic achievement level ranges in the third to fifth grade level.

5. It is further found that plaintiff experiences pain in his back and legs, difficulty riding in a car, and needs to lie down at regular intervals in order to relieve his pain.

6. It is further found that plaintiff's sleep patterns are disturbed.

7. It is further found that baseed on the foregoing, plaintiff is not able to carry on reasonable types of employment and is not a candidate for vocational rehabilitation and therefore is found to be permanently totally disabled within the meaning of the Workmen's Compensation Act.

8. It is further found that defendant is responsible for paying the statutory medical expense incurred as a result of this accidental injury. The parties are directed to attempt to agree on what constitutes statutory medical expense, and in the event they cannot agree, that issue alone will be set for further hearing by the Board."

On January 3, 1986 the full Industrial Board adopted and affirmed Hearing Judge Rader's award.

### Issues

Rockwell presents the following issues, which we have consolidated and restated, for review on appeal:

I. Whether there is sufficient evidence to support the Industrial Board's finding that:

A. Byrd's injury arose out of and in the course of his employment with Rockwell on May 26, 1977?

B. Byrd had no preexisting back impairment?

C. Byrd was totally and permanently disabled?

II. Whether the Industrial Board erred in denying Rockwell credit for payments made to Byrd by Metropolitan Life Insurance Company under Rockwell's non-work related sickness and accident insurance policy.

## DISCUSSION and DECISION

■ The Industrial Board's responsibility as trier of fact in disability cases is to make findings which reveal its analysis of the evidence and are specific enough to permit intelligent review of the Board's decision. In reviewing the Industrial Board's decision, we will not reweigh the evidence nor assess the credibility of the witnesses. We will examine the findings of fact to see if they are sufficient to support the decision. We will review the evidence in the record only to see if there was competent evidence of probative value, whatever its weight, to support the Board's findings. We will consider only the evidence most favorable to the award, including any and all reasonable inferences deducible from the proven facts. *See generally, Holloway v. Madison-Grant United School Corp.* (1983), Ind.App., 448 N.E.2d 27, 31; *Tonn and Blank, Inc. v. Curtis* (1967), 141 Ind.App. 115, 226 N.E.2d 551, 553; *Colgate-Palmolive-Peet Co. v. Setliff, et al.* (1934), 98 Ind.App. 577, 189 N.E. 396.

■ We also note that it is the responsibility of the Industrial Board to weigh the conflicting opinions of physicians. *General Accident, Fire, and Life Insurance Cor., Ltd. v. Waldon* (1950), 121 Ind.App. 1, 94 N.E.2d 487.

## I. *Sufficiency of the Evidence*

### A. *Work-Related Injury*

First, Rockwell claims the evidence shows Byrd received and accepted $43,-013.14 in sickness and accident benefits and extended disability benefits for five (5) years from 1977 through 1982 from Metropolitan Life Insurance Company under Rockwell's insurance policy, and that Byrd therefore admits he received a non-work related injury. Rockwell argues the evidence shows Byrd injured his back while jacking up the family car on May 31, 1977.

■ While the evidence is conflicting, the Board determination that Byrd was injured at work on May 26, 1977, and that Byrd's injury arose out of and in the course of his employment, is adequately supported by sufficient probative evidence. Byrd testified he injured his back on May 26, 1977 while working at Rockwell's plant. Byrd's co-worker, Raymond Nowak, testified that he was working Byrd's shift at a work station located 15 to 20 feet from Byrd on May 26, 1977; he noticed Byrd was not working to his "full capacity"; he questioned Byrd, who responded he had fallen and was in pain; Byrd left the plant and went home before the end of his scheduled shift. Nowak's testimony, specifically dealing with the work-related nature of Byrd's injury, supports Byrd's testimony. Wayne Byrd, claimant's son, also testified that James Byrd did not take part physically in either jacking up the vehicle or changing its tires on May 31, 1977. The Board's finding of fact as to the compensability of Byrd's injury is adequately supported by the evidence of record.

### B. *Pre-Existing Back Impairment*

Rockwell argues the evidence shows that Byrd had a previous back impairment and the apportionment statute mandates Rockwell be responsible only for the damage caused by aggravation of this prior impairment. Byrd argues that although the record contains conflicting evidence regarding a possible susceptibility to back injury, there is clearly sufficient probative evidence in the record to support the Industrial Board's finding that Byrd had no previous back impairment. We agree.

Byrd testified that he had no back problems before the accident on May 26, 1977.

Dr. William Blair testified that in many situations, individuals with some form of spinal stenosis can experience no symptoms of the degenerative disease until it is aggravated by a trauma such as lifting or slipping and falling. This evidence sufficiently supports the Industrial Board's finding that Byrd had no pre-existing back impairment.

■ Rockwell relies on *Goodman v. Olin Mathieson Chemical Corp.* (1977), 174 Ind.App. 396, 367 N.E.2d 1140, to support its claim that the evidence shows Byrd had a back problem before May, 1977 and therefore the apportionment statute[1] should apply to reduce Byrd's disability payments. In *Goodman*, this court held the apportionment statute applies only to those cases in which a claimant at the time of the accident is *already suffering an impairment or disability* in the affected members of the body. The apportionment statute does not apply in cases where the claimant suffers from a previous non-impairing disease or defect which merely contributes to the end result. *Hale v. Mossberg-Hubbard* (1981), Ind.App., 432 N.E.2d 409, 413 (citing with approval, *Goodman, supra*). Where the claimant has a physical condition which renders him more susceptible to being injured, he is entitled to recover for the full extent of the injury received in the otherwise compensible industrial accident. *Bethlehem Steel Corp. v. Cummings* (1974), 160 Ind.App. 160, 310 N.E.2d 565. This court reasoned in *Parks v. Sheller-Globe Corp., Handy Division* (1978), Ind.App., 380 N.E.2d 110:

> "The liability of an employer, however, is not limited to injuries which physically and mentally perfect employees would sustain in similar accidents; rather, he is bound to take employes as he finds them. *Goodman v. Olin Matheison Chemical*

*Corp.* (1977), [174] Ind.App. [396], 367 N.E.2d 1140, 1446. This Court has consistently held that when an employee is physically more susceptible to injury, as long as the susceptibility is not an "impairment or disability" in and of itself, he may recover for the full extent of his injuries which are precipitated by an otherwise compensable industrial accident. *Bethlehem Steel Corporation v. Cummings* (1974), 160 Ind.App. 160, 162, 310 N.E.2d 565, 567; *Delaware Machinery & Tool Company v. Yates* (1976), Ind.App., 351 N.E.2d 67, 72; *Goodman v. Olin Matheison Chemical Corp., supra,* [367 N.E.2d] at 1146.

> ... an injury otherwise compensable under the Workman's Compensation Act entitles an employee to benefits commensurate with the total disability sustained, including the aggravation or triggering of latent pre-existing conditions."

There was sufficient evidence of probative value to support the Industrial Board's conclusion that Byrd had no pre-existing back impairment or disability, although he may have had a susceptibility. We find no error in the Industrial Board's determination that Byrd had no pre-existing back impairment or disability.

### C. *Total v. Partial Disability*

Rockwell challenges the Industrial Board's finding that Byrd is permanently and totally disabled and argues the medical evidence warrants only a finding of permanent partial disability. In its appellate brief, Rockwell argues:

> "The deposition of Doctor David S. Frank goes into great detail to establish both a mental condition and physical condition based on plaintiff's limited education, IQ of third grade, etc., and his

1. IND. CODE 22–3–3–12 provides, in part:
"SUBSEQUENT PERMANENT INJURIES; AGGRAVATION; AWARDS.
That if the permanent injury for which compensation is claimed, results only in the aggravation or increase of a previously sustained permanent injury or physical condition, regardless of the source or cause of such previously sustained injury or physical condition, the board shall determine the extent of the previously sustained permanent injury or physical condition, as well as the extent of the aggravation or increase resulting from the subsequent permanent injury and shall award compensation only for the part of such injury, or physical condition resulting from the subsequent permanent injury ..."

age, together with many other characteristics which were caused either by matters such as organic heredity, environment, limited education, physical attributes, etc., all of which are not related to and not caused by a back injury, whether lifting a fifty pound helmet as now alleged by Byrd, or jacking up a car as originally claimed so as to obtain the S & A benefits and EDB."

Byrd contends the evidence shows the Board correctly found he was permanently and totally disabled. Citing *Perez v. US Steel Corp.* (1977), 172 Ind.App. 242, 359 N.E.2d 925, Byrd maintains the issue of whether an individual is capable of carrying on reasonable types of employment must be measured by his physical and mental fitness for the job and the job's availability. This issue cannot be determined based on whether the work related injury has caused either Byrd's physical and mental fitness or the availability of appropriate jobs.

■ We agree with Byrd and observe Rockwell has fundamentally misunderstood the distinction between impairment and disability. The issue of physical impairment rests upon medical evidence relating to the loss of body function. The disability determination concerns vocational factors relating to the ability of an individual to engage in reasonable forms of work activity. Disability and impairment are not mutually exclusive. Obviously, an injured worker may experience empirically measurable loss of body function of less than 100%, and at the same time also be unable to engage in reasonable forms of work activity (total and permanent disability) as a result of the impairment sustained in an industrial accident. Our court has described a permanent total disability as follows:

"A total disability to be permanent must be one which so destroys or shatters a workman's wage earning capacities as to leave him *unable to resume reasonable types of employment* for the remainder of his life. Since this form of disability is treated in the same section with harms comprising threats to wage earning power such as impairments and lost uses, total permanent disability *must be taken to require a greater incapacity than that produced by any other of the scheduled harms.* However, it is not necessary to a showing of total permanent disability that the workman prove an utter inability to do anything with the remains of his body. The believe-it-or-nots demonstrate that even the most hopeless human wrecks have on occasion developed obscure means for obtaining livilihood [sic]. It is sufficient if the workman can show that he has been so incapacitated by his injuries that *he cannot carry on reasonable types of employment.* The reasonableness of the workman's opportunities will be measured by his physical and mental fitness for them and by their availability."
[original emphasis].

*Perez, supra,* 359 N.E.2d at 927–928 (citing with approval Small's *Workman's Compensation Law of Indiana,* § 10).

■ The evidence of record supports the Board's finding that Byrd is unable to carry on reasonable types of employment, as measured by his physical and mental fitness for available job opportunities. Byrd's physical condition has been fully presented and illustrated through the medical evidence, the expert testimony of Dr. Frank, and the testimony of witnesses. The medical evidence is clear that Byrd suffers from a severe spinal defect which Rockwell concedes has resulted in a permanent partial impairment of 50% of the body as a whole. The testimony of both James Byrd and Betty Rae Byrd indicates that Byrd is incapable of even the most limited activity because he cannot sit for extended periods of time, must lie down at regular intervals to obtain relief from pain, is susceptible to falls, and is frequently required to take pain medication. Dr. Marvin Gold testified specifically that he did not feel Byrd would ever be able to engage in any reasonable types of employment due to his physical impairment. To further support the finding of total permanent disability,

Dr. David Frank administered objective tests which show Byrd's I.Q. places him in the bottom 10 to 15 percent of the population and his basic achievement levels range from the 3rd to the 5th grade levels. Further, Dr. Frank, when specifically questioned as to his opinion of whether Byrd was permanent and totally disabled as this term is defined in the *Perez* decision, stated that Byrd was disabled and there were no reasonable types of employment that Byrd, given his impairment and physical and mental fitness, could perform.

The Board's determination that Byrd is totally and permanently disabled is supported by expert medical and vocational testimony of record, as well as by the testimony of Byrd and his wife.

## II. *Employer Credit for Non-Work Related Insurance Benefits*

█ Rockwell argues that Byrd's injury is either work-related and he is entitled to worker's compensation disability benefits or Byrd's injury is non-work related and he is entitled to sickness and accident benefits under Rockwell's policy with Metropolitan Insurance Company, but not both. Byrd contends the Industrial Board must apply as credit the $43,013.14 in payments made to Byrd by Metropolitan to Rockwell's obligation to pay Byrd disability benefits.

Byrd contends Rockwell's position is clearly contrary to established case authority and the controlling statutory provision because the Board is without jurisdiction to consider any form of employer credit against worker's compensation benefits for payments made by someone other than the employer. We agree and affirm the Board's denial of such credit.

Indiana statutory law contains specific language which controls the credit claimed by Rockwell. I.C. 22–3–3–23 states:

"(a) Any *payments by the employer* to the injured employee during the period of his disability, or to his dependents, which by terms of Chapter 2 through 6 of this Article [22–3–2–1–22–6–3] were not due and payable when made, may, subject to the approval of the Industrial Board be deducted from the amount to be paid as compensation. However, the deduction shall be made from the distal end of the period during which compensation must be paid, except in cases of temporary disability." (emphasis added) (Burns Code Ed.1985).

As this statutory section clearly indicates, it is payments *made by the employer* which are subject to a credit, not payments made by an insurance carrier under terms of a specific policy. The record is clear that all payments were made to Byrd by Metropolitan Life Insurance Company, not Rockwell. Therefore, while Metropolitan may wish to seek reimbursement from Byrd, the Board was without jurisdiction to allow any form of credit for payment of these benefits against amounts awarded Byrd under terms of the Indiana Workers' Compensation Act. Case authority supports the conclusion that Rockwell cannot be allowed any form of credit under the circumstances of this case. In *Inland Steel Corp. v. Almodovar* (1977), 172 Ind. App. 556, 361 N.E.2d 181, this court specifically addressed this issue. The claimant received "non-occupational" group insurance benefits for which the employer claimed a credit against worker's compensation benefits. In determining that the Board had no jurisdiction to allow such a credit, this Court specifically held:

"If Inland, and not some insurance company, paid these 'non-occupational' benefits to or on behalf of Plaintiff pursuant to some contract which gives Inland a right to deduct them from its liability to Plaintiff under this compensation award, then it may be that the Board has jurisdiction to make provision therefore in the award. But if the benefits were paid by an insurance company which is not Inland's workman's compensation carrier ... it appears to be, without question, beyond the Board's jurisdiction to adjudicate Plaintiff's liability or non-liability to such insurer." 361 N.E.2d at 188.

The threshold inquiry is whether the employer paid the benefits to the employee. In those instances where the benefits were

paid by an insurance company as opposed to the employer itself, no credit may be allowed because the Industrial Board lacks jurisdiction to consider these matters. This important distinction is illustrated further in authority cited by Rockwell in its brief.

In support of its assertion that a credit should be allowed, Rockwell cites the case of *Freel v. Foster Forbes Glass Co.* (1983), Ind.App., 449 N.E.2d 1148. While Rockwell asserts this case supports its conclusion that a credit is allowable, Rockwell fails to point out that the "wage continuation" payments made to Freel were *paid by the employer* from its payroll account. The importance of the employer having paid these benefits, as opposed to an independent insurance company, is well illustrated in the court's discussion of the *Inland Steel* case. In distinguishing *Inland Steel*, the *Freel* Court stated:

> "In *Inland*, the Court focused on the issue of Plaintiff's liability to *an insurer* who may have paid benefits under a non-occupational group insurance plan. In the case at bar, it is the *employer* who has made payments from its payroll account, and any worker's compensation payments due the Freels would come from the same source since Foster-

Forbes is self-insured." (emphasis added).

*Freel, supra,* 449 N.E.2d at 1150.

This language, taken from Rockwell's own cited authority, reinforces the statutory rule that if payments are made not by the employer, but by an insurance carrier, the Board may not properly allow a credit in that it lacks jurisdiction to do so. The issue of Byrd's liability or non-liability to Metropolitan for benefits paid is clearly outside the scope of this worker's compensation action, and the Board lacked jurisdiction to consider or allow such credit. Rockwell's claim to a credit, therefore, must be denied by this Court.

The decision of the Industrial Board is affirmed.

CONOVER, P.J., and YOUNG, J., concurs.