SEARS ROEBUCK & CO., and Allstate Insurance Co., Appellants, Defendants Below,

v.

Michael E. MURPHY, Sr., Appellee, Plaintiff Below.

No. 93A02-8612-EX-442.

Court of Appeals of Indiana, Third District.

June 11, 1987.

---

Michael V. Gooch, Harrison & Moberly, Indianapolis, for appellants.

Frank A. Webster, Fort Wayne, for appellee.

STATON, Judge.

Sears appeals Murphy's workmen's compensation award, raising four issues for our review:

1. Whether Murphy's injury arose "out of" his employment.
2. Whether there was sufficient evidence to sustain a permanent partial impairment award.
3. Whether the permanent partial impairment award is contrary to law.
4. Whether the Industrial Board erred in ordering Sears to reimburse a nonparty group insurance carrier.

We affirm in part and reverse in part.

Michael Murphy is employed as a service technician at Sears. His duties include service work on air conditioners, refrigerators, furnaces, and dehumidifiers for customers of Sears. On May 7, 1985, he was at a customer's home installing a window air conditioner with another technician. In order to install the air conditioner, Murphy was required to kneel, lift, squat, get up and down, and twist around. After the job was finished, Murphy carried some tools out to his truck. While walking across the customer's lawn, his right knee felt like it was coming apart. Murphy testified: "I stopped and flexed it a little bit and I kind

of rubbed it, and I kept walking and I walked on out to the truck and it still just felt like it was coming apart."

Problems with the knee continued throughout the day. He went to the company doctor the next day and was referred to an orthopedic surgeon, Dr. Robert R. Shugart. Shugart diagnosed the problem as a torn medial meniscus, or internal fibrocartilage of the knee joint. He operated on Murphy and removed some of the knee's cartilage. Murphy returned to work on July 8, 1985, having missed eight weeks of work. On October 8, 1985, Shugart determined that Murphy suffered a five percent permanent functional impairment of the right leg below the knee.

The Board's Single Hearing Member entered the following Findings of Fact and Award:

1. The Board finds that the issues to be resolved are: (a) whether Plaintiff's injury constitutes an injury by accident arising out of and in the course of his employment with Defendant, such as to make it compensable under the Workmen's Compensation Act, and (b) even if compensable, whether such injury has resulted in permanent partial impairment.

2. Plaintiff claims injury on May 7, 1985, and it is found his average weekly wage was $268.00 per week.

3. The Board further finds that Plaintiff testified in his stipulated deposition, that the injury occurred as he was "walking across the customer's lawn" (described as a level, grass lawn) (Plaintiff's Deposition, Page 11), and as he was walking, his knee started hurting. Later at lunch, the second pain hit his knee while at a McDonald's restaurant (Plaintiff's Deposition, Page 8).

4. The Board further finds that the treating physician, Dr. Shugart, testified in his stipulated deposition that Plaintiff heard the "pop" of the knee as he was walking across the customer's lawn.

 The Doctor further testified that such injuries are common and sometimes caused by the mere act of walking and many people are predisposed to such injury, regardless of employment.

5. The Plaintiff testified that the knee *became symptomatic* as he walked back to his truck from a Sears customer repair job inside a house where he was kneeling, squatting, and lifting. The Doctor testified the injury was acute, not chronic in nature, and that the knee twists somewhat when in motion, whether walking, hauling or squatting. The "torn medial meniscus" can occur with *any type of twisting injury.*

6. The Doctor was reluctant to testify with any direct opinion as to the exact moment of the tear injury, except that it did occur in the short period *before or at the time* of "pop", and pain symptoms noted during the walk back to the truck.

7. It is here found that the twisting "required to cause the tear more logically occurred inside the first house on 5/7/85, during the squatting, kneeling and lifting" involved in appliance repair, and the medial meniscus was stressed, thereby to the point of tearing in the less stressful maneuver of walking on the level lawn back to the Sears truck. In either event, the injury arose not just *during* the course of, but also *out* of the work requiring kneeling, squatting, and lifting. Such result was not expected. The motions were not unusual, but resulted here in an acute internal injury, requiring repair as certainly any other slip, twist or fall.

8. The incident was not trivial when it is noted that house appliance repairs require repairmen to get into unusual positions of kneeling, squatting, *and lifting,* all at the same time. Once out of the contorted positions of stress, even simple flexing of the joints, produces the pain of the injury, probably incurred during the cramped and contorted positions.

9. It is further found a dispute existed between the parties prior to the filing

of Plaintiff's claim and that the law and facts favor the Plaintiff.

10. The Board further finds, concerning the issue of permanent partial impairment, that Dr. Shugart's five percent of the leg below the knee rating was said to have been based on the doctor's concern for future problems, but that the Plaintiff presently has limited functional loss resultant from the injury equal to five percent (5%) (Dr. Shugart's Deposition, Page 24).

11. Plaintiff was temporarily totally disabled from May 8, 1985 to July 8, 1985. From the Plaintiff's and the Doctor's testimony, the arthoscopy [sic] and surgery were both performed on an out-patient basis and Plaintiff lost no work after July 8th.

### AWARD

IT IS, THEREFORE, CONSIDERED, ORDERED AND ADJUDGED by the Industrial Board of Indiana, that Plaintiff shall have and recover from Defendant, compensation at the rate of $166.00 per week, beginning May 8, 1985 for a specific period of eight (8) weeks for his temporary total disability.

IT IS FURTHER ORDERED AND ADJUDGED, that Plaintiff shall have and recover from Defendant, compensation at the rate of $75.00 per week, beginning May 8, 1985, for a specific period of 11.25 weeks, for his five percent (5%) permanent partial impairment to the right lower extremity.

IT IS FURTHER ORDERED AND ADJUDGED, that Plaintiff shall have and recover from Defendant, his statutory medical expenses as follows:

| | |
|---|---|
| CFB Radiology | $ 62.00 |
| (Paid by Plaintiff) | (17.00) |
| Lutheran Hospital | 115.43 |
| (Paid by Plaintiff) | (168.00) |
| Assoc. Anesthesiologists of Ft. Wayne, Inc. | 28.00 |
| (Paid by Plaintiff) | (18.00) |
| Revco Discount Drug | 7.58 |

Such amounts to be paid to the providers or reimbursed to Plaintiff, as noted.

IT IS FURTHER ORDERED AND ADJUDGED, that Plaintiff signed a waiver of Plaintiff's interest in any recovery to Provident Mutual Insurance Co., the group carrier for Mrs. Michael E. Murphy, Sr., as an employee of E.H.I. in Huntertown, Indiana, none of whom were before the Board as witness or party. However, upon testimony of both Plaintiff and Dr. Robert R. Shugart, eighty percent (80%) of the statutory medical expenses incurred by Plaintiff, have been paid by Plaintiff's wife's health and sickness carrier, which expenses are herein found to be the obligation of the within Defendant, Sears, [sic] Roebuck and Co., and Allstate Insurance Company.

IT IS FURTHER ORDERED AND ADJUDGED, that Defendant pay Plaintiff's statutory medical expenses in full, but that the 80% portion of same paid previously by Provident Mutual Insurance Company directly to the providers, shall be paid by Defendant to Plaintiff *AND* Provident Mutual Insurance Company, as their interests may appear, less 10% of each amount deducted as attorney fees, payable to Plaintiff's attorney, FRANK A. WEBSTER.

IT IS FURTHER ORDERED AND ADJUDGED, that all the accrued compensation shall be paid in cash, directly to Plaintiff, except as to attorney fees hereinafter ordered, and in a lump sum, without the deduction or addition of interest, and that costs, if any, be paid by Defendant.

IT IS FURTHER ORDERED AND ADJUDGED, that the additional fees of Plaintiff's attorney shall be: a minimum of $100.00; and in addition thereto, 20% upon the compensation herein ordered paid; said fees to be paid by Defendant directly to Plaintiff's attorney, FRANK A. WEBSTER, from the distal end of the compensation, with credit to the Defendant against the compensation ordered paid.

The Full Industrial Board adopted the single hearing member's decision, but it amended Finding No. 5 to read as follows:

The Plaintiff testified that the knee *became symptomatic* as he walked back to his truck, carrying his tool box, from a Sears customer repair job inside a house where he was kneeling, squatting, and lifting. The Doctor testified the injury was acute, not chronic in nature, and that the knee twists somewhat when in motion, whether walking, hauling or squatting. The 'torn meniscus' can occur with *any type of twisting injury.*

## I.

*Arising "Out Of" The Employment*

Ind.Code 22–3–2–2 provides:

Every employer and every employee, except as herein stated, shall be required to comply with the provisions of IC 22–3–2 through IC 22–3–6 ... respectively to pay and accept compensation for personal injury or death by accident *arising out of and in the course of the employment....* (Emphasis added.)[1]

An accident arises "out of" the employment when a causal connection exists between the injury and the duties or services of the employment. *Indiana and Michigan Electric Co. v. Morgan* (1986), Ind. App., 494 N.E.2d 991, 993, *reh. denied.* This causal connection is established when the accident arises out of a risk incidental to the employment. *Id.*

■ The fine line of whether an activity arises out of the employment is a question of fact to be determined by the Industrial Board. *Id.* at 994. The Court of Appeals is bound by the Board's factual determinations. *Overshiner v. Indiana State Highway Comm'n* (1983), Ind.App., 448 N.E.2d 1245, 1247, *trans. denied.* We do not disturb the Board's finding unless the evidence is undisputed and leads inescapably to a contrary result. *Rensing v. Indiana*

*State University Board of Trustees* (1983), Ind., 444 N.E.2d 1170, 1172, *reh. denied.*

In order to reach a contrary conclusion, we may not disregard any reasonable inferences drawn by the Board from the facts that the evidence tends to prove. *Blaw-Knox Foundry & Mill Machinery, Inc. v. Dacus* (1987), Ind.App., 505 N.E.2d 101; *Wayne Adams Buick, Inc. v. Ference* (1981), Ind.App., 421 N.E.2d 733, 735, *trans. denied.* When reviewing the record, we are required to disregard all evidence which is unfavorable to the findings of the Board and consider only those facts and those reasonable inferences which support such findings. *Id.*

In its Finding of Fact No. 7, the Board stated, in part:

It is here found that the twisting 'required to cause the tear more logically occurred inside the first house on 5/7/85, during the squatting, kneeling, and lifting' involved in appliance repair, and the medial meniscus was stressed, thereby to the point of tearing in the less stressful maneuver of walking on the level lawn back to the Sears truck.... [T]he injury arose ... *out* of the work requiring kneeling, squatting, and lifting....

Sears contends that because Murphy's accident[2] occurred while he was walking on a level, well-managed lawn, no causal connection existed between his injury and the duties of his employment.

The facts from the record favorable to the Board's findings show that:

1. Murphy's injury is considered an acute type of injury caused by a sudden act or one act of twisting.
2. Murphy's description of the day's events was consistent with this type of injury.
3. His injury related back to the twisting he did somewhere along the line.

---

1. By not contesting the Board's finding that Murphy's injury arose "in the course of the employment," Sears apparently concedes that issue. Sears does contest the Board's finding that Murphy's injury arose "out of" the employment.

2. Quoting *Inland Steel Co. v. Almodovar* (1977), 172 Ind.App. 556, 361 N.E.2d 181, *trans. denied,*

the Supreme Court in *Evans v. Yankeetown Dock Corp.* (1986), Ind., 491 N.E.2d 969, *reh. denied,* stated: "... [T]he test as to whether an injury is unexpected and so if received on a single occasion occurs 'by accident' is that the sufferer did not intend or expect that injury would on that particular occasion result from what he was doing." *Id.* at 974.

4. There may have been a delay of a few minutes between the trauma and when he noticed the pain, but not hours.

5. Dr. Shugart did not know when the tear occurred, whether inside the customer's home or on the lawn.

From these facts, it was reasonable for the Board to infer that the sudden act of twisting which caused Murphy's knee to tear more logically occurred while he was squatting, kneeling, and lifting inside the customer's home; this inference is buttressed by the fact that there may have been a delay of a few minutes between the trauma and when he noticed the pain.[3] It was also reasonable to infer that the tear itself occurred as Murphy was walking across the lawn. Murphy heard the "pop" of the knee as he was walking across the lawn; although Dr. Shugart could not say for certain when the tear occurred, he did state that it would have had to occur in the short period before or at the time of the "pop." In any event, because the facts do not point inescapably to a conclusion opposite that of the Board's, we are bound by its determination.

On this particular occasion, Murphy's duties of employment included the installation of an air conditioner in a customer's home. This required him to squat, kneel, and lift in order to get it into a window. While squatting, kneeling, and lifting, he suffered the twisting required to cause the tear of his medial meniscus. Thus, it is clear that a causal connection existed between that twisting and his duties of employment. Because it is well settled that where the primary injury arises out of the employment, every consequence which flows from it likewise arises out of the employment, *United Paperboard Co. v. Lewis* (1917), 65 Ind.App. 356, 117 N.E. 276, 278–79, a causal connection also existed between the tear itself and his duties of employment.[4]

Therefore, we affirm the Board's determination that Murphy's injury arose "out of" his employment.

## II.

### Permanent Partial Impairment

Murphy's operation on June 10, 1985, confirmed Dr. Shugart's initial diagnosis of a torn medial meniscus. Dr. Shugart performed a meniscectomy, removing some cartilage from Murphy's knee.

Murphy returned to work, with full duties and full pay, on July 8, 1985. He testified that "once in a while there's some

---

**3.** Where the findings could reasonably have given rise to two different inferences, the inference chosen by the agency must be sustained even though the Court might have chosen a different inference. *Allen v. Scherer* (1983), Ind.App., 452 N.E.2d 1031, 1035, *reh. denied.*

**4.** Sears argues that because Dr. Shugart testified that Murphy's injury was a common injury "because it is easy to do that" and "because it can be done in a number of ways," Murphy's accident should not be compensated because it did not arise out of a risk incidental to the employment but arose out of a risk incidental to life itself. This argument is weakened considerably once one accepts the Board's finding—which we must—that the *twisting* required to cause the tear occurred during the squatting, kneeling, and lifting inside the customer's home and that the *tear itself* occurred as Murphy was walking across the lawn.

However, this argument can be met in another way. In *Citizens Independent Telephone Co. v. Davis* (1950), 121 Ind.App. 20, 94 N.E.2d 495, *trans. denied,* Davis was struck and killed by lightning while in the course of his employment with the telephone company. The question was whether his death arose "out of" that employment. The case is relevant here because both cases involve risks which (arguably here) are common to all persons, not just any particular employee. The Court in *Davis* stated: "... [I]f there is to be any causal connection between the employment and the injury it must appear (1) that the employee's risk of being injured is greater than that of anyone not so employed, by reason of something peculiar or inherent in the employment itself...." *Id.* at 497. The standard test is always the same: Did the employment increase the danger? *Id.* at 498.

Here, Murphy's employment required him to squat, kneel, and lift on a regular basis—while installing air conditioners or working on refrigerators, furnaces, and dehumidifiers. Therefore, those acts are inherent in the employment itself. In performing his duties, Murphy will squat, kneel, and lift many more times than a person not employed as a service technician. Thus, his risk of being injured as a result of those acts is greater than that of anyone not so employed.

pain," but it does not keep him from doing his job.

On October 8, 1985, Dr. Shugart placed a permanent functional impairment rating of five percent upon Murphy's right knee.

Dr. Shugart's deposition included the following testimony:

A. ... Now, why do we give a rating of which—here's a man who walks in and says 'Yeah, I'm doing great,' and has really a minimal amount of time off for doing heavy work, squatting, and so on. That [permanent functional impairment] rating is given for the anticipation of any *future* functional impairment.

Q. ... The five percent, as I understand it, is related to a concern for future problems?

A. Any future problems.

Q. Is he presently, does he have any functional loss as of this moment to your knowledge?

A. *Truly, no,* but he has a five percent functional impairment rating because he has lost ... a portion of his medial meniscus. (Emphasis added.)

 The existence of permanent partial impairment is a question of fact. *Jenkins v. Pullman Standard Car Mfg. Co.* (1957), 127 Ind.App. 173, 139 N.E.2d 566, 567. Thus, we do not disturb the Board's finding unless the evidence is undisputed and leads inescapably to a contrary result. *Rensing, supra.* The issue of physical impairment rests upon medical evidence relating to the loss of bodily function. *Rockwell International v. Byrd* (1986), Ind. App., 498 N.E.2d 1033, 1039.

The Board's Finding of Fact No. 10 states that: "... Dr. Shugart's five percent of the leg below the knee rating was said to have been based on the doctor's concern for future problems, but that the Plaintiff presently has limited functional loss resultant from the injury equal to five percent ... (Dr. Shugart's Deposition, Page 24)."

 There is no evidence in the record to support the Board's finding that Murphy suffered a functional loss as a result of his injury. Indeed, Dr. Shugart testified that his five percent functional impairment rating was based on a concern for future problems and that Murphy suffers no functional loss at present. Murphy testified that he suffers some pain occasionally, but that he is able to do his job. The Board refers to Dr. Shugart's deposition, page 24, where he states that Murphy has a five percent functional impairment rating "because he has lost ... a portion of his medial meniscus."

It is apparent that the Board granted a permanent partial impairment award because Murphy suffered a loss—the loss of some of the cartilage in his knee. However, a permanent partial impairment award must be based on a different kind of loss—the loss of physical function.

Because there is no evidence that Murphy suffered such a loss, we reverse the Board's permanent partial impairment award.

### III.

### *Whether Award Contrary to Law*

Because of our disposition of the preceding issue, we need not address whether the Board's permanent partial impairment award is contrary to law.

### IV.

### *Reimbursement of Non-party*

 Pending this litigation, eighty percent of Murphy's medical bills either have been paid or are being paid by Provident Mutual Insurance Company. Provident is the group carrier for Murphy's wife, who is an employee of E.H.I. in Huntertown, Indiana. It is not a party to this action.

Murphy testified that Provident was not going to pay his claim at first but agreed to do so after Murphy signed an agreement which stated that he would reimburse Provident if he received a workmen's compensation award from Sears.

In its award, the Industrial Board ordered Sears to pay "Plaintiff's statutory medical expenses in full, but that the 80% portion of same paid previously by Provi-

dent Mutual Insurance Company directly to the providers, shall be paid by Defendant to Plaintiff *AND* Provident Mutual Insurance Company, as their interests may appear...."

Similar facts were present in *Jenkins, supra,* 139 N.E.2d 566. In *Jenkins,* the plaintiff's medical expenses had been paid by his labor union prior to his workmen's compensation award. Jenkins did not seek to be reimbursed personally, but asked that the union be reimbursed by the company. The union was not a party to the action.

The Court stated:

The Workmen's Compensation Act expressly authorizes the Industrial Board to adopt reasonable rules governing its procedure and when so adopted such rules are a part of the law and just as binding as the express provisions of the act. The board's Rule 7 provides that: 'All persons should be joined as plaintiffs in whom any right to any relief, arising out of the same transaction, is alleged to exist. If any such person should refuse to join as a plaintiff, he should then be joined as a defendant and the fact of his refusal to join as a plaintiff should be stated in the application, petition or complaint.' The appellant's application herein specifically alleges a right of his union to relief arising out of the transaction involved but, in disregard of the rule, he failed to join said union or a representative member thereof as a party plaintiff or defendant. Therefore we hold that the union's right to recover the money it paid out in connection with the transaction here in controversy was not presented to the board for decision and the board had no duty to find the facts and make an award in reference thereto.

*Id.* at 568.

Likewise, here, because Provident is not a party to the action, its right to recover was not presented to the Board for decision and the Board had no duty to find the facts and make an award in reference thereto. It may be noted that in *Jenkins* the Board declined to reimburse the union and that the Appellate Court did not state that the Board was precluded from making such an award. However, the Court did preclude the Board from making such an award in *Inland Steel v. Almodovar* (1977), 172 Ind. App. 556, 361 N.E.2d 181, *trans. denied.*

In *Inland,* some of the plaintiff's medical and hospital bills had been paid by a non-occupational group insurance carrier prior to the workmen's compensation action. The parties stipulated at the Industrial Board hearing that, in the event an award was made to the plaintiff, the defendant was entitled to credit for the payments already made by the insurance company. The Board awarded compensation to the plaintiff, but did not reduce the award by the amount of those payments. On appeal, the Court noted that it was not Inland but some insurance company which paid the non-occupational benefits and that plaintiff desired that he be indemnified in the event the non-occupational carrier sought recovery.

The Court stated:

If Inland, and not some insurance company, paid these 'non-occupational' benefits to or on behalf of plaintiff pursuant to some contract which gives Inland a right to deduct them from its liability to plaintiff under this compensation award then it may be that the Board has jurisdiction to make provision therefor in the award. But if the benefits were paid by an insurance company which is not Inland's workmen's compensation carrier ... it appears to be, without question, *beyond the Board's jurisdiction to attempt to adjudicate plaintiff's liability or non-liability to such insurer....* (Emphasis added.)

*Id.* at 188.

Here, by ordering Sears to reimburse Provident, the Board was in effect determining that Murphy was liable to Provident for the amount it paid to the medical providers. However, because Provident is not a party to this action, Murphy's liability to Provident is not at issue and so lies beyond the Board's jurisdiction.[5]

5. This does not, of course, prejudice Provident's right, if any, to claim credit for payments previ-

The question remains, then, whether to award Murphy the full amount paid for his medical expenses or only that amount which he paid. Awarding Murphy only the amount he paid would improperly credit Sears with the amount paid by Provident. *See Inland, supra. See also Rockwell Int'l v. Byrd, supra,* 498 N.E.2d 1033 (Board without jurisdiction to consider any form of employer credit against worker's compensation benefits for payments made by someone other than the employer). But, awarding Murphy the full amount at this point would be unfair to Sears. Appellee's Brief states that since Provident was not a party, Sears assumed that no claim was being made for reimbursement of medical expenses already paid. Because of that, "we had no opportunity to review the medical expenses paid by that group carrier, to cross-examine officials of that group carrier, or in any manner to evaluate or object to the group carrier's expense payments as being statutory medicals under the Indiana Workmen's Compensation Act." Also, the record does not disclose the total amounts paid or the medical providers who were paid by the group carrier.

Therefore, we remand this case to the Industrial Board with directions to make specific findings regarding what statutory medical expenses have been paid by Provident and the amounts of those payments. The Board is further directed to enter an order and to award those amounts to Murphy.[6]

## V.

### Conclusion

The Board is therefore affirmed in its determination that Murphy's injury arose "out of" his employment but reversed in its award of permanent partial impairment.

The case is remanded to the Board to determine and to award Murphy, the statutory medical expenses paid by Provident. This opinion does not affect the Board's award of temporary total disability or its award of the statutory medical expenses paid by Murphy.

Affirmed in part, reversed in part, and remanded for further proceedings in accordance with this opinion.[7]

CONOVER, P.J., concurs.

GARRARD, P.J., concurs in part and dissents in part with separate opinion.

GARRARD, Presiding Judge, concurring in part and dissenting in part.

I concur except as to issue II. I believe the doctor's opinion supports the award of 5% impairment. The majority treats the physician's testimony too literally. It was his opinion that removal of the torn meniscus caused a 5% permanent partial impairment of the knee (and leg below the knee) even though Murphy was experiencing no symptoms at the moment. At least the Board was entitled to so conclude. We are not at liberty to choose a different interpretation.

---

ously made to medical providers in whatever tribunal or agency may have jurisdiction. *See Inland, supra,* 361 N.E.2d at 188.

**6.** In its brief, the Appellant asks that the Court remand this case to the Board with instructions to hold a hearing on the allowance of attorney's fees. However, the Board's order provided for attorney's fees, and a new hearing on that issue is not necessary. Appellant argues that IC 22–3–4–12 allows the Board to award attorney's fees

over and above the amount of the workmen's compensation award. That is correct, but that portion of the statute does not apply unless the Board has determined that the employer acted in bad faith in adjusting or settling the award. No evidence of bad faith was presented to the Board or to us. Therefore, the Appellant's request is denied.

**7.** We do not retain jurisdiction.