**BROWN TIRE COMPANY and Meridian Mutual Insurance Company, Appellants (Defendants Below),**

v.

**UNDERWRITERS ADJUSTING COMPANY and Mark McKim, Appellees (Plaintiffs Below).**

No. 93A02–9010–EX–608.

Court of Appeals of Indiana, Third District.

June 24, 1991.

Samuel J. Furlin, Spangler, Jennings & Dougherty, Merrillville, for appellants.

Kristen K. Rollison, Locke Reynolds Boyd & Weisell, Indianapolis, for appellees.

STATON, Judge.

Brown Tire Company and Meridian Mutual Insurance Company (hereinafter "Meridian Mutual") appeal an adverse ruling by the Workers' Compensation Board of Indiana, raising several issues for our review. We have consolidated and rephrased the issues as follows:

I. Whether the Board erred in considering a doctor's report in making its determination.

II. Whether the evidence was sufficient to support the Board's finding of permanent partial impairment.

We reverse.

On August 3, 1987, Mark McKim was injured during the course of his employment with Brown Tire Company while lifting a tire into the back of a pickup truck. At the time of the injury, Brown Tire was insured by Meridian Mutual. After hospitalization, surgery, physical therapy, and bed rest, McKim returned to work on February 17, 1988 with a 60 pound weight restriction and was released for full duty on March 11, 1988.

On May 31, 1988, while trying to stop a falling tire, McKim reinjured his back. At the time of this injury, Brown Tire was insured by Underwriters Adjusting Company ("Underwriters"). After a hearing before the Workers' Compensation Board, McKim was assigned a rating of 42% permanent partial impairment, 15% of which was attributed to the first injury and 27% to the second. Meridian Mutual appeals, arguing that the evidence did not support a finding that any of the 42% impairment could be attributed to the first injury.

I.

### Admission of Doctor's Report

■ Meridian first contends that the Board erred in considering a letter from Dr. Beghin, an expert retained by Underwriters. In the letter, Dr. Beghin stated in pertinent part:

[I]f we are to accept 42 per cent [sic] as his present impairment, we must then take into consideration that he entered into the work related injury in May of 1988 with a degree of impairment resulting from previous disk surgery and resultant complications.

Consulting the Manual for Orthopaedic Surgeons in Evaluating Permanent Physical Impairment as supplied through The American Academy of Orthopaedic Surgeons, I would note that surgical excision of disk with no fusion, good results, and no persistent sciatic pain would receive a ten per cent [sic] whole body

permanent physical impairment and loss of physical function to the whole body. Since Mr. McKim did suffer a dural tear and resultant arachnoiditis at that time, I would recommend increasing the impairment rating to at least a 15 per cent [sic] whole body permanent physical impairment and loss of physical function to the whole body prior to the May 1988 injury.

(Record, p. 300).

The determination of this letter's admissibility requires an examination of Indiana Code 22–3–3–6 (Supp.1990). That statute allows written statements of physicians to be admitted into evidence upon certain conditions:

(e) All statements of physicians or surgeons required by this section, whether those engaged by employee or employer, shall contain the following information:

(1) The history of the injury, or claimed injury, as given by the patient.

(2) The diagnosis of the physician or surgeon concerning the patient's physical or mental condition.

(3) The opinion of the physician or surgeon concerning the causal relationship, if any, between the injury and the patient's physical or mental condition, including the physician's or surgeon's reasons for the opinion.

(4) the opinion of the physician or surgeon concerning whether the injury or claimed injury resulted in a disability or impairment and, if so, the opinion of the physician or surgeon concerning the extent of the disability or impairment and the reasons for the opinion.

(5) The original signature of the physician or surgeon.

The worker's compensation board shall admit into evidence a statement that meets the requirements of this subsection *unless the statement is ruled inadmissible on other grounds.*

(Emphasis added).

The opposing party may object to the admission of the statement on the basis that it does not comply with subsection (e) if the party tenders the objection within twenty days of the hearing. IC 22–3–3–6(g). A timely objection was tendered by Meridian Mutual to Dr. Beghin's letter.

The controversy in this case revolves around the highlighted language of the statute. Meridian Mutual's objection to the statement was based, *inter alia,* on hearsay. The objection is well taken—the letter is an out-of-court statement offered at the hearing to prove the truth of that which it asserts. *Davis v. Eagle Products, Inc.* (1986), Ind.App., 501 N.E.2d 1099, 1106, *transfer denied.* The question then becomes whether Indiana Code 22–3–3–6(e) provides a statutory exception to the rule. Underwriters contends that it does. We disagree.

There is no indication of any intent to abrogate the hearsay rule with respect to doctors' statements in the language of the statute. On the contrary, the general reference to inadmissibility "on other grounds" appears to incorporate the common law objections to the introduction of evidence. We presume that the legislature is aware of the common law and does not intend to change it beyond what it declares expressly or by unmistakable implication. *State Farm Fire and Cas. Co. v. Structo Div., King Seeley Thermos Co.* (1989), Ind., 540 N.E.2d 597, 598. No such declaration is apparent here.

Having concluded that a party may object on hearsay grounds to a doctor's statement at a workers' compensation hearing, we must examine the extent to which hearsay may be excluded in Indiana in a workers' compensation hearing.

■ Indiana has implemented the "modified residuum rule" with respect to hearsay at workers' compensation hearings. A derivative of the "residuum rule" which originated in New York, the rule provides that all hearsay evidence may be admitted without fear of automatic reversal and may form the basis for a ruling if not objected to. *C.T.S. Corp. v. Schoulton* (1978), 270 Ind. 34, 383 N.E.2d 293, 296. If properly objected to, preserved on review, and not falling within a recognized exception to the hearsay rule, then an award may not be based solely upon hearsay evidence. *Id.* Thus, as long as there is some "thread of

legal evidence" to support the award, it will be sustained, even if the thread is of no great weight, as to weigh the evidence is not the province of this court. *Penn–Dixie Steel Corp. v. Savage* (1979), 180 Ind.App. 627, 390 N.E.2d 203, 207, *transfer denied.*

■ Dr. Beghin's report was introduced on the issue of permanent partial impairment. In *Sears Roebuck & Co. v. Murphy* (1987), Ind.App., 508 N.E.2d 825, 831, we noted that "[t]he issue of physical impairment rests upon medical evidence relating to the loss of bodily function." Therefore, in order for the Board's finding of 15% permanent partial impairment to be sustained, there must be some evidence in the record besides Dr. Beghin's report that McKim suffered a permanent loss of function from the first accident. Our search of the record reveals none.

Underwriters relies upon McKim's testimony that he retained soreness in his legs, that he was not as quick as he was before, and that he had trouble bending over after the first accident. However, McKim's testimony is that these symptoms *went away.* Underwriters also points to the testimony of Dr. Helenowski that McKim was asymptomatic *most of the time.* However, an examination of the record reveals that the doctor was speaking of the period of time before McKim was released without restrictions. Although Helenowski testified that after back surgery, a patient normally has some impairment, he did not testify that the impairment was permanent. The record also reveals that Dr. Helenowski released McKim to his previous job, which involved heavy lifting, without restrictions. Underwriters also relies upon the form 9 application filed by McKim after the first accident which indicates that he was not fully recovered. However, this application was not introduced as evidence at the hearing. Moreover, it was completed before McKim was released to full duty and only indicated that the duration of the impairment was "unknown." Finally, Dr. Beghin testified that he believed that McKim suffered no loss of function when he was released by Dr. Helenowski without restrictions.

Although there was evidence that McKim sustained arachnoiditis (scarring of the nerve roots) as a result of back surgery from the first injury, the medical testimony indicated that one third of all cases of arachnoiditis will resolve clinically and one third will remain the same. At the time of the second injury, McKim was not suffering any pain or loss of function as a result of the arachnoiditis.

In summary, there is absolutely no evidence in the record indicating that McKim's impairment after the first accident was permanent. All of the evidence indicates that McKim's impairment was temporary and had resolved itself prior to the second injury. As a result, McKim's doctor had released him to perform his prior job involving heavy lifting without restrictions.

Since we conclude that there was no residuum of evidence regarding permanent partial impairment as a result of McKim's first accident, we hold that the admission of Dr. Beghin's report was erroneous.

## II.

### Impairment

■ The existence of permanent partial impairment is normally a question to be resolved by the trier of fact. *Sears, supra,* at 831. We do not disturb the Board's finding unless the evidence is undisputed and leads inescapably to a contrary result. *Id.*

In our treatment of the previous issue, we concluded that there was no competent evidence before the Board regarding permanent partial impairment as a result of McKim's first injury. Thus, the undisputed evidence leads inescapably to the conclusion that there was no permanent partial impairment resulting from the 1987 injury. Accordingly, we hold that the Board erred in assessing 15% of McKim's 42% permanent partial impairment to Meridian Mutual.

Reversed.

MILLER, J., concurs.

GARRARD, J., concurs in result and files separate opinion.

GARRARD, Judge, concurring in result.

I cannot agree with the majority's finding that I.C. 23-3-3-6(e) was not intended to obviate hearsay objections to medical reports submitted in accordance with the requirements therein set forth. It seems to me that the statutory mandate that the board shall admit such statements into evidence must have been intended to overcome the normal obstacle that they are, by definition, hearsay.

I nevertheless concur in the result reached. Dr. Beghin's deposition was taken and was admitted into evidence. In it he clearly revealed that his basis for assigning 15% permanent partial impairment to the first injury was not due to any then existing loss of bodily function. His reasons were like those given and found insufficient as a matter of law in *Sears Roebuck & Co. v. Murphy* (1987) Ind.App., 508 N.E.2d 825, 831 (Garrard, J., dissenting). *See also Talas v. Correct Piping Co., Inc.* (1982) Ind., 435 N.E.2d 22, 26.