AMERICAN MAIZE PRODUCTS COMPANY, A CORPORATION
*v.* NICHIPORCHIK

[No. 16,631.   Filed November 12, 1940.   Rehearing denied
December 13, 1940.]

*William J. McAleer, Francis J. Dorsey, William L. Travis* and *Raymond B. Young,* all of Hammond, for appellant.

*Frederick C. Crumpacker, Jr.,* of Hammond; and *Herbert M. Wetzel,* of Chicago, Illinois, for appellee.

STEVENSON, J.—This is an appeal from an award of the Full Industrial Board of Indiana wherein the appellee was granted compensation at the rate of $13.64 per week for the period of his temporary total disability, not exceeding the period fixed by law.

The facts upon which this award was based appear in the findings of the board. These findings are as follows:

"And the Full Industrial Board, having heard the argument of counsel, having reviewed the evidence, and being duly advised therein, now finds that on March 24, 1939, and for approximately thirteen years prior thereto, plaintiff was employed by defendant at an average weekly wage of $24.80; that for approximately ten years prior to March 24, 1939, the plaintiff was employed as a bucker in riveting steel tanks; and that during the course of such employment and over a long period of time plaintiff's right and left hands were subjected to a series of traumatic concussions delivered on the palms of each hand as a result of an air hammer driving rivets against which plaintiff was holding what is commonly known as a dolly bar; that as a result of the series of traumatic concussions so delivered to plaintiff's right and left hands over a long period of time, the plaintiff suffered injuries which manifested themselves on March 24, 1939, to the second, third and fourth fingers of such hands and to the thumb of the right hand, causing such fingers of each hand to become in a fixed contracted position, from which accidental injury

plaintiff has been temporarily totally disabled since March 24, 1939, and is so disabled at the time of this hearing.

"It is further found that said condition is known to medical science as Dupuytren's contraction. It is further found that prior to the 24th day of March, 1939, said plaintiff had in each of his hands a pre-existing condition which was accelerated by the series of traumatic concussions applied to said hands."

From the award based upon these findings the appellant appeals, assigning as error that the final award of the Full Industrial Board of Indiana is contrary to law. Under this assignment of error the appellant contends that the injury for which compensation was awarded was not occasioned "by accident arising out of and in the course of employment."

The appellant contends that the finding of the Industrial Board does not describe an accident as contemplated under the Workmen's Compensation Act but describes only an injury which resulted from the nature and character of the particular employment. The appellant does not deny that the appellee at the time of the hearing was suffering from an impairment to his hands. There was medical testimony to the effect that the muscles of the appellee's hands had contracted to such an extent that the appellee was unable to use his hands in the performance of any labor. The doctors further agreed that he was suffering from Dupuytren's contraction, which is a pathological condition involving the palmar fascia of the hands. There was further testimony to the effect that this condition was the result of the blows received on appellee's hands when the steel bar was driven against the palms of his hands by the rivet hammer. The appellee testified that he first felt pain in the fingers and palm of his left hand about three years prior to March 24, 1939, and that from time

to time he noticed that his hands became stiff after doing this type of work. He stated that this condition grew gradually worse until the fingers and thumbs of both hands developed into a fixed contracted position with the result that he could neither open nor close his hands.

The question therefore presented for our decision is whether or not such a condition is the result of an accident within the meaning of the Workmen's Compensation Law.

The words "injury" and "accident" have been frequently defined by this court and by courts in many other jurisdictions. Our statute provides that " 'injury' and 'personal injury' shall mean only injury by accident arising out of and in the course of employment and shall not include a disease in any form except as it shall result from injury." § 40-1701, Burns' 1933. The term "accident" as used in this act has been repeatedly defined as "an unlooked for mishap, an untoward event which is not expected or designed." *General, etc., Tank Car Corp.* v. *Weirick* (1921), 77 Ind. App. 242, 245, 133 N. E. 391. Our court has further stated that an injury may be the result of accidental means though the act involving the accident was intentional. *General, etc., Tank Car Corp.* v. *Weirick, supra.* This court has also approved the following definition of "accidental means."

" 'An effect which is not the natural or probable consequence of the means which produced it, an effect which does not ordinarily follow and cannot be reasonably anticipated from the use of those means, an effect which the actor did not intend to produce and which he cannot be charged with the design of producing under the maxim to which we have adverted, is produced by accidental means. It is produced by means which were neither designed nor calculated to cause it. Such an effort

is not the result of design, cannot be reasonably anticipated, is unexpected, and is produced by an unusual combination of fortuitous circumstances; in other words, it is produced by accidental means.' " *General, etc., Tank Car Corp.* v. *Weirick, supra,* page 245.

The courts of last resort in many states have been called upon frequently to define the .term "accident" as used in Workmen's Compensation statutes. While the language of these various statutes differ, the current of authority seems to be that "unforeseen, unexpected and unintended injuries to employees have been classed as 'accidents' and held sufficient to justify awards." *Demagalski* v. *State Industrial Accident Commission* (1935), 151 Ore. 251, 47 P. (2d) 947; *Maryland Casualty Co.* v. *Rogers* (1935) Texas, 86 S. W. (2d) 867.

Do the facts as found by the Industrial Board in the case at bar justify an award for an injury by accident as contemplated by our statute? The authorities cannot be reconciled on this proposition.

Facts similar to those in the case at bar have been before the courts of many states, in some of which compensation has been allowed and in some of which compensation has been denied.

In the case of *Aldrich* v. *Dole* (1926), 43 Ida. 30, 249 P. 87, the appellant was a truck driver. The gears of the truck driven by the appellant had become so worn that in order for him to travel at high speed, it was necessary for him to press the shift lever with his right knee. In so doing the cogs would slip out of mesh and cause the lever to strike the knee; and the pressing of the knee against the lever and the striking of the knee by the lever caused the knee to become bruised to such an extent that the claimant became disabled. The question presented was whether, as a matter of law, this injury was sustained by an accident

arising out of and in the course of his employment. In passing upon this question, the Supreme Court of Idaho said, page 35:

"Had there been a single occasion when the knee pressed the lever and was struck by it, and injury had resulted therefrom, there would be no difficulty in concluding that the injury was received by accident. In such case it would be said that in the discharge of his duties, the workman placed his knee against the lever, the lever struck the knee, the injury resulted; and it would not be said that the injury was usual, was expected or was designed. Now if the single pressing of the knee against the lever and the single striking of the knee by the lever would result in an injury by accident, can we say that the injury actually received was not caused by accident merely because there was a continuation of the causes that brought on the injury? The statute does not restrict compensation to an injury that results from a single event, and there would seem to be no sound reason for holding that an injury occasioned by a number or series of events is not within the act. The continuous pressing of the lever and the repeated striking of the knee had a cumulative effect so that the injury came on gradually; and claimant received the unexpected and unintentional injury during the time of the operation of the causes that produced the injury."

In the case of *Lovell* v. *Williams Bros., Inc.* (1932), Mo., 50 S. W. (2d) 710, the claimant was employed in digging a ditch. In digging the ditch he used a pick, shovel, and a tile spade. In the course of his work he had to gouge with his spade, using the blade of it to cut roots and hard earth along the bank of the ditch. In doing this work he used his right hand on the top of the handle of the spade. As a result of so using this spade the hand became swollen and painful after several days of such use. As a result of this condition, the plaintiff's hand was disabled. In passing

upon his right to compensation the St. Louis Court of Appeals said, page 713:

"There can be no question that the plaintiff's injury happened violently, nor do we think there ought to be any question that it happened suddenly, within the meaning of the act. The commission found, and the evidence shows, that the plaintiff used the spade with his right hand in hitting or gouging down the side of the ditch through hard ground and roots, for several days, and that this continued violence culminated on the afternoon of December 1st, in an injury to his hand, producing at the time an objective symptom of such injury. This we think was an injury by accident, as used and defined in the statute."

In the case of *Associated Employers' Reciprocal* v. *State Industrial Commission* (1922), 88 Okla. 249, 212 Pac. 604, the injured workman was employed as a common laborer. He had been digging ditches for several days, using a pick, and while so engaged he bruised his right hand. The bruise to the hand became so painful that he was forced to cease work on July 4, 1920, and was disabled for about two months. In awarding compensation the Supreme Court of Oklahoma said, page 251:

"The contention is made by counsel that there was no sudden or violent accident which resulted in the injury of the claimant. Under the law it is not necessary that the claimant receive a sudden or violent injury in order to receive compensation. The term 'accident' is not used in a narrow sense.

"It is clear that the development of an abscess in the palm of the hand of the claimant in the case at bar, resulting from the continuous use of the hand in using a pick in ditching, is such injury as is compensable under the law."

In the case of *Charles Burrell & Sons* v. *Selvage* (1921), 90 L. J. K. B. N. S. (Eng.) 1340, the appellee

was engaged in cleaning a certain part of a shell and in the course of that work, she, from time to time, suffered from cuts and abrasions on her fingers. She continued at this work from the latter part of 1917 to April, 1918, when she became ill and went home. It was then found that she was suffering from some form of injury due to poisoning of her cut fingers. In allowing compensation, the court said, page 1341:

> "In the present case, there is no dispute that the disease from which the respondent suffered was a disease which distinctly arose out of the injuries which she had received in the course of her employment, and it cannot be disputed that the cuts and abrasions on her fingers were on each occasion what would be called an 'accident' within the meaning of the statute. Therefore, the only question for consideration is whether, when the disease is due not to one specific and definite accident, but to a series of accidents, each one of which is specific and ascertainable, although its actual influence on the resulting illness cannot be precisely fixed, the workman is not entitled to the benefit of the statute. I cannot find any words in the statute which permit of such a construction. In the present case personal injury was suffered, it was suffered by accident, the accident is no less accidental because it occurred on a series of occasions instead of on one. It follows that the claim to compensation was properly established."

In the case of *Bollinger* v. *Wagaraw Bldg. Supply Co.* (1939), Court of Errors and Appeals of New Jersey, 122 N. J. L. 512, 6 A. (2d) 396, the petitioner was employed in the manufacturing of cement blocks made from ashes, sand, and cement. In the performance of this work a certain quantity of sand and ashes found its way into his shoes each day and irritated a pigmented mole on his left foot. This irritation continued for many weeks and eventually developed into a malig-

nant cancer. In awarding compensation for this injury, the court said in part, page 519:

"We have long held the view that an accident is 'an unlooked for mishap or untoward event which is not expected or designed,' or 'an unintended or unexpected occurrence which produces hurt or loss.

.  .  .

"But, be that as it may, we think that the requirement that the injury or death arise by accident, under our statute, is satisfied if the claimant discharges the burden of proving that the condition complained of, i. e., the injury or death, is related to or affected by the employment, that is to say, if but for the employment it would not have occurred. The exception to this principle is the case of occupational disease with which our statute deals as a separate matter. . . Hence, where a workman suffers injury or dies because of a previous physical condition, it must appear that the mishap or fatality is related to or caused by the employment, and that it arose out of and in the course thereof. Death from disease alone during the employment will not suffice, but injury or death which on proofs that are sufficient and persuasive, would not have occurred but for the services rendered in the employment, amount to injury by accident."

In the case of *Standard Cabinet Co.* v. *Landgrave* (1921), 76 Ind. App. 593, 132 N. E. 661, the appellee was a carpenter who had been in the employ of the appellant for nineteen years. At the time of his injury he had been scraping and polishing floors for six or seven days. This required him to work on his knees. As a result of this employment he contracted brusitis, which is sometimes called "housemaid's knee." This court in sustaining the right of compensation, said, page 596:

"It has been repeatedly held by this court, that the words 'by accident arising out of and in the course of employment,' as used in the Workmen's Compensation Act, *supra,* should be liberally con-

strued in harmony with the humane purposes of the act, and that the word 'accident' means an unlooked for mishap or untoward event not expected or designed. It cannot be contended that the injury suffered by the appellee was other than an untoward event. For nineteen years his occupation as a carpenter in the employ of appellant had not developed the disease. The most of his work had been, not scraping floors, but general carpentering and repairing, but only a few days before, he was finally disabled, and his knee began to pain. He had no warning of the approach of his disability and no knowledge that he had brusitis till his physician informed him."

We are in accord with the reasoning of these cases. In the case at bar there was testimony to the effect that for two or three years prior to March 24, 1939, the appellee had served on numerous occasions as riveter's helper. The appellee testified that he first noticed the pain and soreness in his left hand about three years before the date of discharge and that he noticed a similar condition developing in his right hand about a year later. There was medical testimony to the effect that the appellee was suffering from Dupuytren's contraction and that this condition occurred as a result of the blows received on the appellee's hands. The appellee's doctor testified that in all probability the appellee had a pre-existing physical condition which was accelerated and aggravated by the blows on his hands. While it is true that the appellee can point to no particular date nor to a particular blow which produced the resultant injury, yet it is not necessary that the accident occur at any particular or specific time. The series of blows to the appellee's hands produced the injury and loss which was an unintended and unexpected occurrence.

We are not unmindful of the cases from other states which are in apparent conflict with our view. The

cases of *Industrial Commission of Ohio* v. *Lambert* (1933), 126 Ohio 501, 186 N. E. 89; *Industrial Commission of Ohio* v. *Borchert* (1934), 49 Ohio A. 5, 194 N. E. 881; *Reardon's Case* (1931), 275 Mass. 24, 175 N. E. 149; *Zajkowski* v. *American Steel & Wire Co.* (1918), 258 Fed. 9, are quite similar in many respects to the case at bar. The Lambert case, *supra,* and the Reardon case, *supra,* are cases involving Dupuytren's contraction. But in both of these cases the Industrial Board found that the claimant's condition was the result of long years of continuous labor and not the result of any personal injury within the meaning of the statute. In neither of these cases was there any evidence of a series of blows against the hands of the claimant nor was there any evidence of a pre-existing condition which was accelerated by these concussions. In the Zajkowski case, *supra,* the appellant was compelled to work under strong electric lights, which lights were reflected into his eyes by bright and mirror-like sheets of steel which came from a machine which he operated. Over a period of two years this light finally destroyed his eyesight. The court held that this was an occupational disease. In the Borchert case the court defined "accident" as "an instant happening" and denied compensation for the reason that the appellant's condition was the result of a series of injuries administered to his body over a long period of time. We are not in accord with this definition.

Our attention has been called to the case of *Young* v. *Melrose Granite Company* (1922), 152 Minn. 512, 189 N. W. 426. In that case the muscles of the appellant's back and shoulder became atrophied through degeneration of the nerves supporting them, occasioned by heavy and excessive strain placed upon the muscles for a long period of time in operating a stone surfacing machine. The Supreme Court denied compensation under the

statute which defined the term "accident" as " 'construed to mean an unexpected or unforeseen event, happening suddenly and violently, with or without human fault, and producing at the time injury to the physical structure of the body.' "

Numerous cases have been called to our attention wherein metallic dust, poison gases and deadly fumes have been breathed into the system by workmen over long periods of time with resultant injuries arising therefrom. Chief among these cases are *Brewer* v. *Veedersburg Paver Company* (1931), 92 Ind. App. 547, 177 N. E. 74; *Moore* v. *Service Motor Truck Co.* (1924), 80 Ind. App. 668, 142 N. E. 19; *Smith* v. *International High Speed Company* (1923), 98 N. J. 574, 120 A. 188; *Szalkowski* v. *C. S. Osborne & Co.* (1931), 9 N. J. Misc. 538, 154 A. 611; *Black* v. *Creston Auto Co.* (1938), 225 Iowa 671, 281 N. W. 189. Generally speaking, these cases have been considered as occupational diseases rather than injuries. We do not believe that the appellee's condition is the result of an occupational disease. We cannot say as a matter of law that the condition from which the appellee suffers is the usual incident or result of the particular employment in which the appellee was engaged. His condition was brought about by a repetition of blows all relatively slight but which culminated and resulted in as serious and disabling an injury as though the blow or incident had occurred at one time. *Brown* v. *St. Joseph Lead Company* (1938), 60 Idaho 49, 87 P. (2d) 1000.

In the light of the authorities above quoted and for the reasons herein stated, it is our opinion that the award of the Industrial Board is not contrary to law and the award is accordingly affirmed.

NOTE.—Reported in 29 N. E. (2d) 801.