**Kenneth EASTHAM, Appellant
(Plaintiff Below),**

v.

**WHIRLPOOL CORPORATION,
Appellee (Defendant Below).**

No. 93A02–8709–EX–370.

Court of Appeals of Indiana,
Third District.

June 8, 1988.

Robert L. Simpkins, Evansville, for appellant.

George A. Porch, Evansville, for appellee.

STATON, Judge.

Kenneth Eastham appeals a negative award by the Industrial Board of Indiana (Board). He raises three issues, which we restate as:

1. Whether he was denied due process of law because the Board did not hold a trial *de novo* after a hearing before a single member.

2. Whether the Board's finding that he did not suffer an injury by accident is contrary to the evidence and the law.

3. Whether the Board's finding that his mental condition was not causally related to any incident occurring at work is contrary to the evidence and the law.

Affirmed.

Eastham filed a claim for compensation with the Board on February 7, 1983, alleging that on June 14, 1982, he suffered an injury to his back and neck as a result of an accident arising out of and in the course of his employment with Whirlpool. A single hearing member of the Board heard his claim and concluded that Eastham had suffered a compensable injury and that his present mental condition was precipitated by the injury. Accordingly, Eastham was awarded compensation benefits.

Whirlpool filed an application for review by the full Board. Upon review of the evidence from the initial hearing, the Board entered the following findings:

7. Plaintiff developed muscle soreness in his upper body, particularly on the right side, as a result of performing the hot melt gun job on June 14, 1982 because it was his first day to perform that job.

8. Plaintiff reported to Defendant on June 15, 1982 that he would not report for work due to soreness in his arms and back.

9. Plaintiff also contacted Defendant on June 16, reporting that his forearm, back and shoulder still had pain and that his shoulder and back muscles were "pulled out".

10. Plaintiff contacted Defendant on June 17 and told the company nurse that he "tore back up, arm and shoulder and upper and low back up [sic]" and asked to see the company doctor. Plaintiff also told the nurse that the hot melt job was what "tore him up."

11. Plaintiff called in to Defendant on June 18, continuing to complain of pain in his right shoulder and stating that he "would not go back on hot melt gun."

12. On June 21, the Monday following Plaintiff's first day of work on the hot melt gun and following Plaintiff's reported absence on June 18, 1982, Plaintiff saw the company doctor, Dr. Fitzsimmons.

13. Dr. Fitzsimmons reported that Plaintiff attributed his problem to the hot melt gun and that he couldn't stand up over one hour at a time. Plaintiff hurt everywhere Dr. Fitzsimmons touched him.

14. Dr. Fitzsimmons diagnosed Plaintiff's condition as sore muscles and ordered a lumbar spine X-ray which was reported to be normal.

15. Plaintiff later saw two orthopaedic specialists and was treated conservatively.

16. While hospitalized for conservative treatment, Plaintiff began exhibiting major psychiatric symptoms and was evaluated by a clinical psychologist.

17. Plaintiff was found to have a low average I.Q. and to be experiencing severe anxiety and depression.

18. Plaintiff's condition has been diagnosed as peranoid [sic] schizophrenia.

19. Plaintiff may have been predisposed to psychiatric problems but was functioning in a work environment prior to June 14, 1982.

20. Plaintiff's emotional disorder greatly aggravated his physical symptoms.

21. Plaintiff's psychiatric condition renders Plaintiff permanently totally disabled. However, there is insufficient evidence to establish that Plaintiff suffered an accident within the meaning of the Workmen's Compensation Act on June 14, 1982 or that his condition is causally related to any incident occurring at work on June 14, 1982.

22. Plaintiff did not exhibit any symptoms of his psychiatric condition for more than one (1) year subsequent to the date of the alleged accident.

23. The muscle soreness experienced by Plaintiff after performing one shift of new duties was not unexpected and therefore does not constitute an injury within the meaning of the Act.

Said Full Industrial Board of Indiana now finds for Defendant and against the Plaintiff on Plaintiff's Form 9 Application for the Adjustment of Claim for Compensation, filed on the 7th day of February, 1983.

(R. 12).

## I.

### Due Process

Eastham first raises the issue whether he was denied due process of law because the Board did not hold a trial *de novo*. The applicable statutes governing disputes and reviews are I.C. 22–3–4–6 and I.C. 22–3–4–7, which provide:

Sec. 6. The board by any or all of its members shall hear the parties at issue, their representatives and witnesses, and shall determine the dispute in a summary manner. The award shall be filed with the record of proceedings, and a copy

thereof shall immediately be sent to each of the parties in dispute.

Sec. 7. If an application for review is made to the board within twenty (20) days from the date of the award, made by less than all the members, the full board, if the first hearing was not held before the full board, shall review the evidence, or, if deemed advisable, hear the parties at issue, their representatives and witnesses as soon as practicable and shall make an award and file the same with the finding of the facts on which it is based and send a copy thereof to each of the parties in dispute, in like manner as specified in the last foregoing section.

Eastham sets out his argument as follows:

1. Eastham has a constitutional right to due process in his worker's compensation case.

2. The Full Industrial Board has a right to delegate the constitutional requirement of a fair hearing to a single hearing officer, however, once it delegates this responsibility, the review powers of the Full Industrial Board are thereby limited. It cannot reverse the decision of the single hearing member unless it preserves the worker's constitutional rights.

3. In order to reverse a factual determination made by a single hearing member, the Full Industrial Board has two options. First, it can grant the employee a trial de novo and hear the evidence. Secondly, it can issue a statement that it has reviewed the entire record and read all of the evidence and depositions and reaches a different factual conclusion from that of the single hearing member. If the Full Industrial Board fails to do one of these two things, it cannot summarily reverse a factual determination made by the single hearing member. To do otherwise would violate a worker's constitutional due process rights.

(Reply Brief of Appellant, 7–8).

Eastham cites no authority for his proposition that the Board's review power is limited once the responsibility to hear the evidence is delegated to a single hearing member. This is not surprising since case law provides that review by the full Board is a *proceeding de novo* (not, as Eastham claims, a *trial de novo*). *Hayes v. Joseph E. Seagram & Co.* (1944), 222 Ind. 130, 52 N.E.2d 356, 357; *Burton v. Rock Road Const. Co.* (1968), 142 Ind.App. 458, 235 N.E.2d 210, 212, (Full Board Hearing is regarded as a hearing de novo and Board can make its own findings and determinations); *B.G. Hoadley Quarries, Inc. v. Eads* (1959), 129 Ind.App. 670, 160 N.E.2d 202, 205 (Industrial Board hears case de novo, and facts upon such review by full board are determined upon evidence introduced in original hearing).

We find no merit in Eastham's argument that this procedure violated his due process rights.

## II.

### *Injury by Accident*

■ Eastham raises the issue whether the Board's finding that he did not suffer an injury by accident is contrary to the evidence and the law. Our standard of review on appeal is limited. We are bound by the Board's factual determinations and may not disturb them unless the evidence is undisputed and leads inescapably to a contrary result. In order to reach a contrary conclusion, we may not disregard any reasonable inferences drawn by the Board from the facts that the evidence tends to prove. *Sears Roebuck & Co. v. Murphy* (1987), Ind.App., 508 N.E.2d 825, 829, *reh. denied.*

Further, we are required to disregard all evidence which is unfavorable to the findings of the Board and consider only those facts and those reasonable inferences which support such findings. *Id.*

■ Accordingly, the record reveals the following facts.[1] Eastham worked at

---

1. Our statement of the facts is drawn heavily from Appellee's Brief due to its exemplary concise recitation of the relevant facts.

Whirlpool from January 19, 1966 until June 14, 1982. On that date, he was moved from the Morgan Avenue plant to the highway plant where he began new duties on the hot seal gun job. The job consisted of using an air pressure gun that was attached to the ceiling and connected to a hose. The use of the gun did not entail heavy lifting since the gun's weight was supported from the ceiling. The workers stood along the assembly line on which empty refrigerator cabinet shells moved and sprayed the hot seal on the seams inside the cabinets. Three workers operated the hot seal guns for each cabinet while a fourth served as a backup to cover any spots the three sprayers might miss.

Eastham worked the entire day of June 14, 1982, on the job. He didn't complain about the job and reported no accident or injury. No one observed any incident where Eastham was hurt or fell and no one said anything about any unusual occurrence. He neither asked for medical treatment nor sought it.

Eastham did not appear for work at Whirlpool after June 14, 1982. He called in on the early mornings of June 15, 16, 17 and 18 and stated that he would not be at Whirlpool to work that day. Finally, On June 21, 1982, he called in and stated that Leon Hunt (a union steward) told him he should see Whirlpool's physician or Eastham might have problems with group benefits or a sickness leave. Eastham asked to see the Whirlpool physician on June 21, 1982, and he was seen by Dr. Fitzsimmons that same day. The doctor performed a physical examination of Eastham and an orthopaedic/neurological evaluation. He also ordered x-ray films and a chemical muscle test. Dr. Fitzsimmon's opinion was that Eastham had some muscle soreness, perhaps from the new job, but that he could resume work. The tests performed were all normal and Eastham was told the results and that he could return to work. The next day he took a sickness leave of absence.

Eastham testified that he saw his personal physician, Dr. Ralph Wilson, on June 14, 1982, after work, but his first medical receipt from that doctor was dated June 23, 1982. He didn't return to Whirlpool's physician and was never referred to any health care provider by Whirlpool. He was treated by an orthopaedist, Dr. Ramaswamy, and hospitalized. Several months later, Dr. Ken Davis, an orthopaedist, began treating Eastham. He was hospitalized at St. Mary's in July, 1983. Prior to the hospitalization Dr. Davis noticed no mental problem. During that hospitalization Eastham began exhibiting bizarre behavior. A psychiatric consultation was obtained with the diagnosis being that the patient was a paranoid schizophrenic. The physicians agreed that Eastham had always been a paranoid schizophrenic. Neither the original psychiatric consultant nor Dr. Davis attributed Eastham's mental problems to Whirlpool or any incident at Whirlpool.

The psychiatrists and psychologists who testified agreed that Eastham is mentally disabled. Dr. Davis was the only orthopaedist who testified and his opinion is that Eastham has a physical impairment of 5% to the body as a whole from all problems including his prior auto accident injuries and arthritis.

I.C. 22–3–2–2 provides:

Every employer and every employee, except as herein stated, shall be required to comply with the provisions of IC 22–3–2 through IC 22–3–6 respectively to pay and accept compensation for personal injury or death by accident arising out of and in the course of the employment....

Eastham contends that because the Board found that he sustained muscle soreness while performing the hot melt gun job, the necessary causal connection exists to require the Board to conclude his accident arose out of his employment duties. This argument, however, makes a fatal leap in logic. Before the Board needs to determine whether an injury by accident "arose out of" employment, it must have determined an injury by accident occurred.

The Indiana Supreme Court recently attempted to end the confusion created by interpretations of the phrase "injury or death by accident."

The statutory language "by accident" should be applied literally, rather than reinterpreted by inserting the article "an" as if written "by an accident." In this way both the statutory language and the legislative purposes will be served. As cited by the Court of Appeals below, we agree with Judge White in *Inland Steel Co. v. Almodovar* (1977), 172 Ind. App., 556, 361 N.E.2d 181:

Perhaps it is a mistake to attempt to define "accident" when what we are concerned with is not the definition of the word standing alone but the concept expressed in the phrase: "injury by accident". If we accept, which we do, the concept expressed in *Indian Creek* [(1918) Coal & Mining Co. v. Calvert, 68 Ind.App. 474, 119 N.E. 519, 120 N.E. 709] then "injury by accident" is the equivalent of "accidental injury". Which is to say that "injury by accident" is not the equivalent of "injury caused by an accident" or "injury resulting from an accident". As the Harvard Law Review article [Bohlen, "A Problem in the Drafting of Workmen's Compensation Acts," 25 *Harvard L.Rev.* 328 (1912)] quoted *supra* in the excerpt from *Indian Creek* says "[t]he test as to whether an injury is unexpected and so if received on a single occasion occurs 'by accident' is that the sufferer did not intend or expect that injury would on that particular occasion result from what he was doing."

*   *   *   *   *   *

We therefore hold that the statutory term "injury or death by accident," as used in the workmen's compensation laws, means unexpected injury or death. To the extent this clarification is inconsistent with prior holdings, they are overruled.

*Evans v. Yankeetown Dock Corp.* (1986), Ind., 491 N.E.2d 969, 974–975.

The Board weighed the evidence, determined the credibility of the witnesses, and found that Eastham did not sustain any injury other than muscle soreness. From this finding, the Board concluded that the muscle soreness was not an injury by accident because it was an expected result of performing his new duties on that particular occasion. The job foreman testified that workers complain of muscle soreness after working on the hot seal gun job. The evidence supports the Board's findings and its conclusion is a correct application of the law.

### III.

### *Mental Condition*

Eastham raises the issue whether the Board's finding that his mental condition was not causally related to any incident occurring at work is contrary to the evidence and the law. Mental conditions may be compensable under the Indiana Workmen's Compensation Act if the condition is a result of a primary injury compensable under the act, *Sears Roebuck & Co.*, *supra*, at 830 (where the primary injury arises out of the employment, every consequence which flows from it likewise arises out of the employment), or, in the absence of a physical injury, if the disorder itself is the primary injury arising out of and in the course of employment. *Hansen v. Von Duprin* (1987), Ind., 507 N.E.2d 573, 576.[2]

In his brief, Eastham argues that his present mental condition resulted from the injury he sustained on June 14, 1982, and thus is causally related to his employment.

---

2. Whirlpool states in its brief that in the absence of a physical injury, a mental injury arises out of employment if it results from a situation of stress other than the day-to-day mental stresses which all employees experience, citing *Hansen v. Von Duprin* (1986), Ind.App., 496 N.E.2d 1348. However, we point out to counsel that the Supreme Court reversed the appellate court on this point of law. Once it is determined there is an injury by accident, [w]hether the injury is mental or physical, the determinative standard should be the same. The issue is not whether the injury resulted from the ordinary events of employment. Rather, it is simply whether the injury arose out of and in the course of employment.

507 N.E.2d at 576. That is to say, the question is whether the injury is causally connected with the employment.

We note that Eastham's counsel is also apparently unaware of the Supreme Court opinion as he too cited to the appellate court opinion.

As discussed above, however, there is evidence to support the Board's finding that Eastham did not sustain a compensable injury. Consequently, no primary injury existed from which his mental condition resulted. Further, the evidence supports the apparent conclusion of the Board that the neck and back pains Eastham complained of were caused by his mental condition, rather than being the cause of his mental condition.

Affirmed.

RATLIFF, C.J., and HOFFMAN, J., concur.