Elsie (Adkins) DUVALL,
Appellant–Plaintiff,

v.

ICI AMERICAS, INC., Appellee–
Defendant.

No. 93A02–9304–EX–186.

Court of Appeals of Indiana,
First District.

Sept. 29, 1993.

Stephen W. Voelker, Jeffersonville, for appellant-plaintiff.

Peter J. Sewell, Segal and Shanks, Jeffersonville, for appellee-defendant.

NAJAM, Judge.

## STATEMENT OF THE CASE

We are asked to decide whether carpal tunnel syndrome is an occupational disease as defined under the Indiana Occupational Diseases Act. Elsie Duvall appeals an award from the Worker's Compensation Board ("Board") in favor of her former employer, ICI Americas, Inc., which operates the Indiana Army Ammunition Plant in Charlestown. The Board denied her claim for benefits, found that her work-related carpal tunnel syndrome did not constitute an occupational disease and found that as an injury, her claim was barred by the two-year statute of limitations for a claim under the Worker's Compensation Act. We affirm.

## ISSUES

We restate the issues presented on appeal as follows:

1. Whether Duvall's carpal tunnel syndrome is an occupational disease under the Indiana Occupational Diseases Act or an injury under the Indiana Worker's Compensation Act.

2. Whether Duvall's claim is barred by the two-year statute of limitations.

## FACTS

Duvall was employed from 1981 until September 23, 1987, on ICI's production line in a job described as "weigh, load and sew." By March of 1983, Duvall experienced the symptoms and was diagnosed with carpal tunnel syndrome.[1] Duvall then filed a worker's compensation claim and alleged that she suffered from a condition called "trigger thumb" of her right hand which was complicated by her carpal tunnel syndrome. The Board accepted the parties' stipulation that Duvall suffered no temporary total disability but found that Duvall's

1. Carpal tunnel syndrome is "a complex of symptoms resulting from compression of the median nerve in the carpal tunnel, with pain and burning or tingling parathesias in the fingers and hand, sometimes extending to the elbow." *The Sloane–Dorland Annotated Medical–Legal Dictionary* at 689 (1987). Carpal tunnel syndrome may follow from either major or minor trauma to the wrist or hand and often results from work activities that require continuous repetitive motion of the hand. 4B *Lawyer's Medical Cyclopedia* § 31.42a, at 190 (James G. Zimmerly ed., 3d ed. 1989).

trigger thumb was caused by her employment at ICI without deciding the effect of her carpal tunnel syndrome. The Board awarded Duvall her medical expenses and attorney's fees.

In September of 1984, Duvall again complained of pain and consulted Dr. Kasden who diagnosed a mild form of carpal tunnel syndrome in her right hand and wrist. Dr. Kasden prescribed a treatment regime of vitamins and night-splinting and placed restrictions on her work duties. Those restrictions precluded her from using vibratory tools, from heavy gripping or pinching with simultaneous flexing and extension of her right wrist, and from lifting more than five pounds. ICI honored Duvall's work restrictions until September of 1987 when it asked Duvall to perform work which exceeded the weight restriction prescribed by her physician. Duvall refused, and ICI then terminated her employment.

On September 13, 1991, Duvall filed an Application for Adjustment of Claim with the Board and alleged as grounds for her claim that "[r]epeated trauma to [her] hand caused carpal tunnel syndrome" to result from an initial job-related injury. Record at 9. Duvall sought "future medical bills ..., temporary total disability, and total disability." Record at 9. Following an evidentiary hearing, the Board adopted the single Board member's findings and entered a decision which denied Duvall's claim. Duvall appealed that decision, and this court, in *Duvall v. ICI Americas, Inc.* (1992), Ind.App., 589 N.E.2d 1200, reversed and remanded to the Board for further consideration and instructed the Board either to accept or reject the parties' stipulation that Duvall's carpal tunnel syndrome was work-related. On remand, the Board accepted the parties' stipulation concerning causation, found that Duvall's carpal tunnel was not an occupational disease, concluded that Duvall's claim was barred by

the two-year statute of limitations, and entered a modified decision in favor of ICI. Duvall again appeals the Board's decision.

## DISCUSSION AND DECISION

### Standard of Review

 In this appeal from a decision of the full Worker's Compensation Board, we are bound by the Board's findings of fact and may only consider errors in the Board's conclusions of law. *See* IND. CODE § 22-3-4-8(b). We cannot disturb the Board's factual determinations unless we conclude that the evidence is undisputed and leads inescapably to a contrary result. *Eastham v. Whirlpool Corp.* (1988), Ind. App., 524 N.E.2d 23, 26, *trans. denied.* We disregard all evidence unfavorable to the Board's findings of fact and consider only the facts and reasonable inferences which support those findings. *Id.* While this court is not bound by the Board's interpretations of law, we should reverse only if the Board incorrectly interpreted the Worker's Compensation Act. *See Houchins v. Kittle's Home Furnishings* (1992), Ind.App., 589 N.E.2d 1190, 1192.

### Issue One: Occupational Disease or Injury

 Duvall maintains that the Board erred when it found that her carpal tunnel syndrome was not an occupational disease. Duvall urges us to hold that carpal tunnel syndrome is an occupational disease because her repetitive motion injury flowed as a natural risk out of her employment. ICI responds that our courts have previously determined carpal tunnel syndrome is not an occupational disease and that no extension or modification of Indiana law is warranted under these circumstances. *See Star Publishing Co. v. Jackson* (1944), 115 Ind.App. 221, 58 N.E.2d 202.[2] We must

---

**2.** Both parties cite *Jackson* as a carpal tunnel syndrome case but we do not rely upon *Jackson.* While the employee in *Jackson* exhibited symptoms which are now commonly associated with carpal tunnel syndrome, the weight of medical evidence presented supported the conclusion that the employee suffered from a neurosis

caused by an ongoing dispute between him and his supervisor. *See id.* at 223, 58 N.E.2d at 203. Thus, the court concluded that the employee's condition was not an occupational disease because the medical evidence was insufficient to establish the requisite causal connection between the condition and the workplace. *Id.* at

construe our statutes as written, and we conclude that under Indiana law carpal tunnel syndrome is not an occupational disease and that the Board's determination was correct.

The Indiana Occupational Diseases Act defines an "occupational disease" as follows:

"(a) As used in this chapter, "occupational disease" means a disease arising out of and in the course of the employment. Ordinary diseases of life to which the general public is exposed outside of the employment shall not be compensable, except where such diseases follow as an incident of an occupational disease as defined in this section.

(b) A disease arises out of the employment only if there is apparent to the rational mind, upon consideration of all of the circumstances, a direct casual connection between the conditions under which the work is performed and the occupational disease, and which can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment, and which can be fairly traced to the employment as the proximate cause, and which does not come from a hazard to which workers would have been equally exposed outside of the employment. The disease must be incidental to the character of the business and not independent of the relation of employer and employee. The disease need not have been foreseen or expected but after its contraction it must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a rational consequence."

IND.CODE § 22–3–7–10. Duvall reasons from this definition that since ICI stipulated to the causal connection between her carpal tunnel syndrome and her employment at ICI, and the Board adopted that stipulation, the Board was required to find that carpal tunnel syndrome is an occupational disease. We cannot agree.

The definition of an "occupational disease" found in Indiana Code § 22–3–7–10 is incomplete because it assumes that the employee suffers from a "disease" and focuses on whether the disease is causally connected to workplace conditions. "Disease" is not defined in the Indiana Occupational Diseases Act, nor have our cases squarely confronted what constitutes a disease under the Act. Duvall has established by stipulation that her carpal tunnel syndrome is causally connected to her occupation, but that causal relationship does not require the conclusion that carpal tunnel syndrome is an occupational disease. Therefore, the first question before us is whether Duvall's carpal tunnel syndrome is a disease.

In construing a statute, we examine and interpret the statute as a whole, giving words their common and ordinary meaning. *Spaulding v. International Bakers Services, Inc.* (1990), Ind., 550 N.E.2d 307, 309. Our foremost objective is to determine and give effect to legislative intent. *Id.*

The statutory definition describes an occupational disease in terms of a worker's "exposure" to conditions in the workplace. Specifically, the definition provides that a disease is an occupational disease when it results from "*exposure* occasioned by the nature of the employment." I.C. § 23–3–7–10(b) (emphasis added). The term "exposure" indicates a passive relationship between the worker and his work environment rather than an event or occurrence, or series of occurrences, which constitute injury under the Worker's Compensation Act. Duvall's carpal tunnel syndrome did not result from exposure to workplace conditions at ICI but resulted from the hand and wrist mechanics associated with Duvall's work on ICI's production line. Her carpal tunnel syndrome did not result from where she worked but from the work she did.

Moreover, carpal tunnel syndrome is in a class of disorders described as "cu-

225, 58 N.E.2d at 204. Here, in contrast, the parties stipulated to the causal connection between Duvall's carpal tunnel syndrome and her employment at ICI.

mulative trauma disorders." As a disorder caused by trauma, carpal tunnel syndrome is not a disease. A trauma is defined as a "wound, especially one produced by sudden *physical injury." American Heritage Dictionary of the English Language* at 1366 (1981) (emphasis added). Similarly, a "traumatism" is an "injury" or a "wound produced by injury; trauma." *Id.* Thus, by definition, the term trauma is synonymous with injury, and the cumulative effect of more than one trauma is likewise an injury.

■ We rely upon our supreme court's decision in *Evans v. Yankeetown Dock Corp.* (1986), Ind., 491 N.E.2d 969, which clarified the term "injury" as used in Indiana Worker's Compensation Act. After *Evans*, in order to state a compensable claim under the Worker's Compensation Act, a claimant is no longer required to prove that his injury arose from an accident as a specific, identifiable event; rather, an employee's injury is "accidental" when it is the unexpected consequence of the usual exertion or routine performance of the particular employee's duties. *See Evans*, 491 N.E.2d at 974. Either an accidental cause or an unexpected result will support a claim. *Id.*

Our recent decision in *Union City Body Co. v. Lambdin* (1991), Ind.App., 569 N.E.2d 373, applied the *Evans* holding in the context of an injury resulting from the cumulative effect of work activities. The employee in *Lambdin* became gradually, permanently and totally disabled as the result of the bending, twisting, stooping and lifting he did as part of his job. *Id.* at 373. We concluded that the employee's back condition was a compensable injury under the Worker's Compensation Act because the day-after-day occurrence of

stressful conditions affecting his back combined to produce an injurious result. *See id.* at 374.[3]

■ Duvall's carpal tunnel syndrome resulted from trauma to the carpal tunnel in her wrist produced by the repetitive, day-to-day motions she was required to perform as part of her job at ICI. Each motion and trauma, while incremental in its effect, resulted in the cumulative trauma disorder of carpal tunnel syndrome as though the trauma had occurred as a discrete event. *See Nichiporchik*, 108 Ind. App. at 513, 29 N.E.2d at 806. Under the rationale of *Evans* and *Lambdin*, Duvall suffers from an injury causally related to her employment which is compensable under our Worker's Compensation Act. The Board so found, and we will not disturb the Board's conclusion that Duvall's carpal tunnel syndrome is an injury and not an occupational disease.

Further, "injury" is defined by the Worker's Compensation Act as "only injury by accident arising out of and in the course of the employment and do[es] not include a disease in any form *except as it results from injury.* IND.CODE § 22–3–6–1(e) (emphasis added). Thus, even assuming carpal tunnel syndrome were a disease, it would properly be designated as an "injury" under the Worker's Compensation Act because it results from injury, which is trauma to the carpal tunnel of the wrist.

Although we should construe the Occupational Diseases Act liberally, we should not extend the Act to embrace cases which cannot reasonably be interpreted to fall within its scope. *See Reid v. Ontario Manufacturing Co.* (1947), 117 Ind.App. 273, 275, 70 N.E.2d 357, 358, *trans. denied.* Further, we note that our legislature enact-

---

**3.** We applied a similar analysis and reached the same result in *American Maize Products Co. v. Nichiporchik* (1940), 108 Ind.App. 502, 29 N.E.2d 801. In *Nichiporchik*, the employee brought a claim for an accidental injury under the former Workmen's Compensation Act and sought temporary total disability benefits. The employee was diagnosed with Dupuytren's contraction, a pathological condition involving the palmar fascia of the hands which left the employee's hands in a fixed, contracted position.

*Id.* at 503, 29 N.E.2d at 802. The employee's job required him to hold a bar with both hands against which a air hammer drove rivets. *Id.* The court affirmed the Board's finding that the series of traumatic concussions delivered to his hands over a long period of time which produced Dupuytren's contraction was the result of an accidental injury as defined by the Workmen's Compensation Act. *Id.* at 511, 29 N.E.2d at 805.

ed the Occupational Diseases Act to compensate employees who contract occupational diseases but who are generally not covered under the Worker's Compensation Act. *Spaulding*, 550 N.E.2d at 309. Here, our resolution of this appeal is consistent with the original purpose of the Occupational Diseases Act. Duvall's carpal tunnel syndrome, while not compensable as an occupational disease under the Occupational Diseases Act, is compensable as an injury under the Worker's Compensation Act. Our holding would not preclude Duvall from bringing a timely claim under the Worker's Compensation Act. We find no error in the Board's conclusion that Duvall's carpal tunnel syndrome is not an occupational disease.

### Issue Two: Statute of Limitations

We must next determine whether the Board properly concluded that Duvall's claim, as a claim for work-related injury, is barred by the two-year statute of limitations for such claims. *See* IND.CODE § 22–3–3–3. Duvall contends that her claim was timely filed on September 23, 1987, her last workday at ICI. She reasons that because her carpal tunnel syndrome condition is injury from repetitive trauma, her claim accrued on the day of her "accident" which was the last day she could work at ICI. She further reasons that she could not determine the permanence of her injury until ICI terminated her employment because of her injury. We disagree with Duvall and conclude that the Board did not err when it found that Duvall's claim was barred by the statute of limitations.

As we noted in *Issue One*, our courts no longer require that a job-related injury arise from an accident as an occurrence or a discrete event. *See Evans*, 491 N.E.2d at 975. When a job-related injury is the result of continuous, day-after-day events which combine to produce an injurious result, a continuing wrong exists and the statute of limitations commences to run when the permanence of the injury is discernible. *Union City Body Co. v. Lambdin* (1991), Ind.App., 569 N.E.2d 373, 374.

Therefore, the Board was required to determine when Duvall was first able to discern that the cumulative effect of her work-related activities had resulted in her injury. The evidence shows that Duvall was first diagnosed with carpal tunnel syndrome in 1983, and that in 1984, her physician placed her on a treatment regime and work restrictions. Record at 254–55 and 259. With that diagnosis, the cumulative effect of Duvall's work demands were discernible as an injury.

Duvall's argument that her injury was not discernible until she was terminated from employment is creative but unconvincing. The statute of limitations for an injury under the Worker's Compensation Act is determined by when the injury is discernible, not by when the employee's condition prevents her from earning full wages. *Compare* IND.CODE § 22–3–3–3 and *Lambdin*, 569 N.E.2d at 374 *with* IND. CODE § 22–3–7–9(e), (f) (statute of limitations for disablement under Occupational Diseases Act runs from last day of exposure to hazards; "disablement" defined as event when worker prevented from earning full wages).

In 1991, Duvall filed an adjusted claim for benefits arising from her carpal tunnel syndrome. The Board correctly concluded that Duvall's adjusted claim was barred by the statute of limitations because she filed that claim more than two years after her carpal tunnel syndrome first became discernible.

The decision of the Worker's Compensation Board is affirmed.

BAKER and MILLER, JJ., concur.