**K-MART CORPORATION,**
Appellant–Defendant,

v.

**Jo Ann MORRISON, Appellee–Plaintiff.**

No. 93A02–9407–EX–451.

Court of Appeals of Indiana,
Fourth District.

Jan. 4, 1995.

Rehearing Denied Feb. 9, 1995.

Transfer Denied May 11, 1995.

Douglas F. Stevenson, Stevenson, Rusin & Friedman, Ltd., Chicago, IL, for appellant.

Timothy J. Walsh, Edward N. Kalamaros & Associates, P.C., South Bend, for appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

K–Mart Corporation appeals the award of the Worker's Compensation Board in favor of Jo Ann Morrison. We affirm.

### ISSUES

I. Whether the Worker's Compensation Board was required, under our previous remand, to hear additional evidence.

II. Whether the record supports the Board's determination that Morrison was temporarily totally disabled.

III. Whether Morrison justifiably refused a job offered to her by K–Mart.

IV. Whether the Board erred in awarding medical expense payment of $1,200.

V. Whether the Board's award exceeds the statutory limit.

### FACTS

As previously described in *K–Mart Corp. v. Morrison* (1993), Ind.App., 609 N.E.2d 17, Jo Ann Morrison was involved in a work related accident occurring October 9, 1986, at the K–Mart store in Warsaw, Indiana. She was struck by numerous falling boxes which contained clothing. Morrison was treated by several doctors authorized by K–Mart. She also sought and obtained some medical diagnosis and treatment from doctors not authorized by K–Mart. Morrison continued to work at K–Mart from the time of her accident until March 8, 1988, when she was no longer able to do so.

On April 2, 1987, Morrison filed an application for worker's compensation benefits. An award by the Board to Morrison of permanent total disability benefits was appealed in *K–Mart Corp. v. Morrison, supra.* We affirmed the Board's finding that Morrison suffered from reflex sympathetic dystrophy (RSD)[1] as a result of the accident at work. However, we found the determination of permanent total disability to be unsupported by sufficient facts in the record as to the perma-

nence of Morrison's condition and remanded for a "redetermination ... of Morrison's disability status." *Id.* at 30. We found the Board's findings of fact not to be "adequately specific" to disclose its analysis in concluding Morrison's failure to accept placement in another K–Mart position was justified under Ind.Code 22–3–3–11 and remanded on that matter. *Id.* at 32. Finally, we found that some medical expenses ordered by the Board to be paid were not properly authorized, and others lacked a specific finding of what portion remained unpaid; accordingly, we remanded for a new finding on medical expenses.

After receipt of voluminous correspondence from the respective counsel on this matter (and many others), the single Board member ruled on December 13, 1993, that on the "issue of Plaintiff's disability status," the parties were "limited ... to the facts, as present in the record" according to the "Court of Appeals Opinion, Page 25." R. at 225. The same order instructed the parties "to communicate with one another" and "resolve the issue of unpaid medical bills." *Id.* at 226.

The order of the single member dated March 8, 1994, stated that the parties had "agreed that the issue of the compensability of all past medical bills shall be resolved with the payment" by K–Mart to Morrison of $1,200. *Id.* at 250. After twenty-eight findings of fact, the order concluded Morrison had been and continued to be "temporarily totally disabled" since March 9, 1988. *Id.* at 254. K–Mart applied for review by the full Board. On June 30, 1994, the full Board adopted the single member's decision of March 8th and appended ten more findings of fact. R. at 312.

### DISCUSSION AND DECISION

▮ In reviewing a decision by the Board of Worker's Compensation, "we are bound by the Board's findings of fact and may only consider errors in the Board's conclusions of law." *Duvall v. ICI Americas, Inc.* (1993), Ind.App., 621 N.E.2d 1122, 1124

---

1. RSD is "a little known but potentially debilitating condition affecting the sympathetic nervous system." *K–Mart, supra* at 21.

(citing Ind.Code 22–3–4–8(b)). Accordingly, "we cannot disturb the Board's factual determinations unless we conclude that the evidence is undisputed and leads inescapably to a contrary result." *Id.* (citing *Eastham v. Whirlpool Corp.* (1988), Ind.App., 524 N.E.2d 23, 26). We consider only the facts and reasonable inferences which support the Board's findings, disregarding all evidence unfavorable to those findings. *Id.*

## I. *Mandate of the previous Court of Appeals decision*

■ K–Mart claims that "the Board should have held a hearing and heard evidence" rather than use the existing record. Appellant's brief at 12. K–Mart asserts that when this court stated, "we remand . . . for a redetermination, using the facts as presented in the record, of Morrison's disability status," we were actually

> "simply stating the elemental principle, that there must be evidence to support findings, and findings must support legal conclusions. This is a general statement of the law, not a limitation on the receipt of evidence on remand."

Appellant's reply at 10. While we will concede that the language employed in directing that a redetermination be made on remand would allow the *option* of being interpreted as K–Mart suggests, the language can in no way be found to *require* the Board to conduct an evidentiary hearing.

The only authority to which K–Mart refers us on this issue is *Herrell v. Casey* (1993), Ind.App., 609 N.E.2d 1145. In *Herrell*, we declared that "[i]t is beyond dispute that a trial court, upon remand *after reversal of an order granting summary judgment*, is empowered to adduce such additional facts as are dispositive of the case and rule accordingly." *Id.* at 1147 (emphasis added). In both K–Mart's brief (at 11) and its reply (at 10), K–Mart quotes the above while omitting the underlined portion. As cited by K–Mart,

the quotation is misleading.[2] Quoted in full, the proposition for which *Herrell* stands is not helpful to K–Mart's argument that the Board erred by not hearing new evidence.

We find no error in the Board's having proceeded to make a determination of Morrison's disability based upon the existing record.

## II. *Disability determination*

■ K–Mart's challenge to the Board's determination that Morrison is temporarily totally disabled is couched in two separate arguments. First, K–Mart claims that

> "[t]he current award amounts to the same award as this Court reversed on the last appeal as unsupported in the evidence. It is based on the same record which this Court found inadequate to support that award."

Appellant's brief at 6.

What we previously found with respect to Morrison's disability was that the award of permanent total disability was erroneous because Morrison's "disability was not permanent or quiescent." *K–Mart, supra* at 29. Our analysis of the disability evidence of record focused solely on the permanent nature of Morrison's disability; thus, we did not reach the question of whether the disability was total or partial. K–Mart's appeal fails to assert that any single one of the member's findings of fact describing Morrison's inability to work[3] is not supported by the existing record. Nor is the finding of the full Board that Morrison had not "been able to work on a regular sustained basis at any reasonable type of employment" so challenged. R. at 313. Given our standard of review, their findings do not "lead[ ] inescapably to a contrary result." *Duvall, supra.* Therefore, the determination of total disability is not erroneous. And because we have distinguished *temporary* total disability from *permanent* total disability, *see Covarubias v.*

---

2. Counsel is reminded of his obligation under Ind.Professional Conduct Rule 3.3.

3. For example, "7. [In August 1988, Jo Ann] was still having problems with her left arm, shoulder and her legs. She had severe pain and burning and was getting progressively worse

with developing emotional difficulties, including depression. She had been falling down and continued falling. She would drop things. She started using a cane, then crutches for stability. She often spent the entire day in bed." R. at 251.

*Decatur Casting, Etc.* (1976), 171 Ind.App. 533, 358 N.E.2d 174, K–Mart's claim that the "current award amounts to the same award" must fail.

Second, K–Mart claims

"[t]he award of continual total disability to March 8, 1994 on a record where proofs were closed on April 9, 1991, is pure speculation and contrary to law. . . ."

Appellant's brief at 7. In support of this argument, K–Mart refers us to *Olin Corp. v. Calloway* (1974), 160 Ind.App. 69, 309 N.E.2d 829, and *Callahan v. Lovelace Truck* (1973), 158 Ind.App. 164, 301 N.E.2d 801 for the requirement that evidence must exist to support an award of compensation by the Board.

Again, K–Mart fails to challenge any of the findings of fact which indicate that Morrison's RSD condition in 1991 required treatment, and without treatment there would be no improvement.[4] We find absolutely no evidence in the record originally before the Board in 1991 suggesting the possibility of a spontaneous recovery by Morrison. Thus, the findings of the full Board that Morrison's condition had "grown progressively worse for lack of proper treatment" and that she would "benefit from medical treatment," which "treatment specific for RSD" K–Mart had never tendered to Morrison, support the conclusion that her untreated condition remains totally disabling.

### III. *Job refusal*

We previously considered whether K–Mart's having offered Morrison an alternative position—working behind the jewelry counter, rather than in her position as a clerk in apparel—would permit K–Mart to "reduce its workmen's compensation obligation by procuring for the injured employee employment by which [s]he can earn some wages without injury to [her]self" under Ind.Code 22–3–3–11. *K–Mart, supra* at 31. The statute provides:

(a) If an injured employee, only partially disabled, refuses employment suitable to his capacity procured for him, he shall not be entitled to any compensation at any time during the continuance of such refusal unless in the opinion of the worker's compensation board such refusal was justified.

(b) Before compensation can be denied under this section the employee must be served with a notice setting forth the consequences of the refusal of employment. . . .

We found the Board's findings of fact lacked specificity with respect to its analysis in concluding Morrison's failure to accept the jewelry counter position was justified.

■ As noted in our previous decision as well as in *Jones & Laughlin Steel Corp. v. Kilburne* (1985), Ind.App., 477 N.E.2d 345, and as explicitly stated in the statute, the "refusal of employment" provision is only applicable when the injured employee is *partially* disabled. Because the Board found Morrison to be totally disabled, a determination we have found not to be erroneous, we need not consider any alleged error in applying I.C. 22–3–3–11.

### IV. *Medical expenses*

In its original appeal, K–Mart claimed the Board erred in awarding over $9,000 in medical expenses because many of the included expenses had been already paid and others were not authorized by its treating physicians. We referred to the statute governing medical treatment of injured employees pending adjudication of impairment:

After an injury and prior to an adjudication of permanent impairment, the employer shall furnish or cause to be furnished, free of charge to the employee, an attending physician for the treatment of his injuries, and in addition thereto such surgical, hospital and nursing services and supplies as the attending physician or the worker's compensation board may deem necessary. . . .

---

4. For example, the prognosis of one physician was that, "absent proper treatment, [Jo Ann] would eventually be a total cripple." R. at 252. Another doctor's prognosis was "very poor without proper treatment" and his recommendation was for "intensive physical therapy, relief of pain by continuous analgesic procedures, and psychological behavioral attention to behavioral modification." *Id.* at 253.

I.C. 22–3–3–4. We remanded "this issue to the Board for a specific finding of what portion of these bills remain unpaid; that is, which medical providers have yet to be paid for their services and how much is still owing to each" because "medical providers should not be allowed to recover for services for which they have already been paid." *K–Mart, supra* at 33. We further instructed the Board "to exclude from its determination of unpaid medical bills the services of [certain doctors] as well as any related expenses incurred after" Morrison's medical leave began in March of 1988. *Id.* at 34.

While K–Mart concedes that "[d]uring the remand period, the parties conferred and agreed that the amount which could be in controversy" was $1,200, K–Mart contends that there was no agreement "concerning 'liability' to pay that amount." Appellant's brief at 9.

As noted in the FACTS section, in December of 1993 the Board ordered the parties to resolve the issue of unpaid medical bills. On January 25, 1994, Morrison's counsel notified the Board in writing that "the parties have reached an agreement that K–Mart Corporation's obligation to pay all past medical bills, to the date of January 21, 1994, is $1,200.00" R. at 232. The letter indicates that a copy of that letter was sent to K–Mart's counsel. K–Mart has never asserted nonreceipt of the letter. The record maintained by the Board for the period from our remand through the issuance of the instant award comprises over 300 pages. Up to the time of the December 1993 order, that record contains at least twelve instances in which a filing by one party with the Board was followed by a responsive filing by the other party.[5] From the time of Morrison's counsel's letter of January 25th until the orders of the member on March 2, 1994 and March 8, 1994, incorporating the agreement about medical bills, K–Mart filed no objection to the statement about medical expenses with the Board.

Morrison refers us to *Frazier v. Whited* (1938), 106 Ind.App. 57, 16 N.E.2d 974, wherein we found a matter not raised before the Board could not be considered by the appellate court. *See, also, Reeve v. Georgia–Pacific Corp.* (1987), Ind.App., 510 N.E.2d 1378. K–Mart counters that counsel's letter to the Board "is not evidence," and because there was never a hearing the matter could never have been argued by K–Mart as required by *Frazier.* Appellant's brief at 10.

We find K–Mart's failure to notify the Board of its "disagreement" about what the agreement of the parties was as to medical expenses may have waived this matter. Alternatively, we find support for the award in *K–Mart, supra.* Our discussion concerning medical expenses began by setting out the statute cited above, which requires an employer to provide medical services to an employee injured on the job. We proceeded to note the need to distinguish paid from unpaid bills and to direct that bills from certain physicians not approved by K–Mart to treat Morrison be excluded from K–Mart's liability.[6] Implicit in our then remanding for the amount due to be computed accordingly is K–Mart's liability for the resulting amount. We find no error in the Board's holding K–Mart liable for the $1200 which the parties found to be due.

## V. *Statutory limit to benefits*

K–Mart reminds us that the law limits payment for temporary total disability to "a period not to exceed five hundred (500) weeks." I.C. 22–3–3–8. The original single Board member order of October 8, 1991, included the stipulation of the parties that K–Mart had paid Morrison for 3⅞ weeks of temporary total compensation shortly after the accident. Original record at 276. K–Mart suggests that the absence of any reference to K–Mart's payment of this compensation in the instant order renders the order

---

5. *See,* Record at 34 and 36; 40 and 41; 44 and 53; 60 and 75; 63 and 75; 79, 81 and 82; 79 and 90; 99, 104 and 110; 115, 121, 125; 130 and 137; 207 and 211; 204 and 214.

6. Because a "new doctor or treatment should, at the very minimum, be communicated to the employer in such a way that that employer is put on notice that medical care is needed and the employer is given an opportunity to provide" such medical treatment, "K–Mart cannot be held liable for" treatment by the physicians treating Jo Ann without K–Mart's knowledge. *K–Mart, supra* at 34.

for prospective benefits "for a period not to exceed 500–weeks" erroneous. R. at 314.

K–Mart presents no authority for this contention. Morrison concedes that the Board's order "neglected to give [K–Mart] credit for the 3⅞ weeks" of temporary total disability compensation K–Mart paid to Morrison. We agree with Morrison that we can assume the Board will follow its statute and, accordingly, K–Mart will receive the credit to which it is due.

We affirm.

CHEZEM, J., concurs.

BARTEAU, J., concurs in result.

